ALBANY,
January, 1816.

THE PEOPLE
v
HERRICK.

                                    THE PEOPLE *against* HERRICK.

A witness, ei-
ther on the *voir
dire* or on cross
examination, is
not bound to an-
swer any ques-
tion which would
subject him to
punishment, or
render him *in-
famous* or dis-
graced,

AT the court of general sessions of the peace, for the county
of *Washington*, *Herrick* was brought to trial for grand larceny.
The charge in the indictment was for stealing the property of
*Roswell Granger*, consisting of pillowcases, shirts, table-cloths,
handkerchiefs, &c. The evidence against the prisoner was,
that one pillowcase and one handkerchief were found in his pos-
session. The prisoner then offered to prove, by *Samuel Hardy*,
that he (*Hardy*) was present, and saw the prisoner purchase the
pillowcase and handkerchief, in his possession, of one *Washburn*,
and pay for them, and that *Washburn* had absconded. *Hardy*,
the witness, being called to the stand, was asked by the public
prosecutor, " whether he," *Hardy*, " had not been convicted of
petit larceny, and whether he was not then in confinement under
that conviction?" The counsel for the prisoner objected to the
question, insisting that the witness was not bound to answer it;
but the court overruled the objection; and the witness answering
the question in the affirmative, he was set aside, as incompetent.
The prisoner was, thereupon, convicted; but the court, at the
request of his counsel, delayed giving judgment, until the advice
of this court could be obtained, whether the witness, *Herrick*,
was bound to answer the question put to him by the public pro-
secutor, or not?

SPENCER, J., delivered the opinion of the court. If the wit-
ness was not bound to answer the question, he ought not to have
been compelled to do so; and being excluded, and the defendant
deprived of the benefit of his testimony, the conviction was
illegal.

* *Peake*, 129,
130.

Mr. *Peake*,* in his treatise on evidence, in considering whe-
ther a witness is bound to answer a question, either rendering
him infamous, or disgracing him, says that a practice of putting
such questions, and requiring them to be answered, had con-
tinued for a long a time without objection, but that some of the
judges had lately thought, that neither convenience nor autho-
rity justify this mode of examination; and he admits that the
highest and most enlightened characters in the profession are

much divided on this point, and that the question was then undetermined.

In *Priddle's* case, (*Leach's Crown Law*, 382., old edition,) he was examined before Mr. Justice *Buller*, when called as a witness, and was asked, as it would appear, without objection, whether he had not been convicted of a conspiracy, and sentenced to be imprisoned in *Newgate* for two years, and, on his answering in the affirmative, he was rejected. In *The King* v. *Edwards*, (4 *Term Rep.* 440.,) on an application to bail the prisoner, one of the bail was asked, whether he had not stood in the pillory for perjury ; the question was objected to, as tending to criminate him ; the court overruled the objection, saying there was no impropriety in the question, as the answer could not subject him to any punishment.

There are no other cases, in the *English* courts, which I have been able to meet with, affirming the right to examine a witness on *voir dire*, as to his own turpitude or criminality. I mean questions, the answer to which directly implicate the witness in a crime. There is no pretence for saying, that it ever was decided that a witness is obliged to answer questions which would subject him to punishments, pains, penalties, or infamy. The ground of the decision, in *The King* v. *Edwards*, is, that the witness having been convicted and punished, he did not, by answering the question, subject himself to any punishment ; and the same observation is applicable to *Priddle's* case.

There are many authorities which go strongly to uphold the contrary doctrine, that a witness is not bound to answer questions which prove that he has been convicted of the *crimen falsi*. In *Cooke's* case, (4 *State Trials*, 748. *Salk.* 153.,) Ch. J. *Treby* said, and the other judges concurred, " men have been asked, whether they have been convicted and pardoned, for felony, or whether they have been whipped for petit larceny, but they have not been obliged to answer ; for though their answer in the affirmative will not make them criminal, nor subject them to punishment, yet they are matters of infamy ; and if it be an infamous thing, that is enough to preserve a man from being bound to answer." It is laid down as an axiom, by almost all the writers on evidence, that the party who would take advantage of the exception, that a witness has been convicted of the *crimen falsi*, must have a copy of the record of conviction ready to produce in court. (*Buller's N. P.* 292. *Gilb. Law of Ev.*

old edit. 102., *Comyn's Dig.. Testmoigne*, (A. 5.) 1 *Hawk.* tit. *Ev.* ch. 46. s. 104., and the cases there cited.)

Since the observations in *Peake's* text, the case of *The King* v. *The Inhabitants of Castell Careinion*, (8 *East*, 77.,) has occurred; and there Lord *Ellenborough*, with the concurrence of all the judges, decided, that a witness could not be called on to testify that he had been convicted of larceny, and punished. His lordship says, " whether or not the witness were convicted of felony, would appear by the record; and it cannot be seriously argued that a record can be proved by the admission of any witness. He may have mistaken what passed in court; this can only be known by the record, and there is no authority for admitting parol evidence of it."

It may be said, that a witness may be introduced unexpectedly, and that a party may be surprised so far, as not to have the record of conviction ready to produce. This is very probable; but other things are to be considered than the convenience or interest of parties. It is against a fundamental principle, that a party shall accuse himself, and propagate, to the remotest period, his own infamy. The declaration of the party is not the best evidence of which the case is susceptible; and it may be the fact, that the party himself mistakes the nature of his offence; for we perceive that *conspiracy*, and even *barratry*, will exclude a person from testifying; the infamy of the crime, and not the nature of the punishment, working the incapacity.

But the hardship of excluding such questions is imaginary. If the witness has been convicted of an infamous crime, his character is lost; and it is not to be supposed there are not witnesses, within the reach of the party, to prove the character of the witness. If the offence has been committed long before, and the witness, by his good conduct, has regained his standing in society, then it affords no regret that the party objecting to his competency has not the record of his conviction. On authority, and the fitness of the rule, we are of opinion, that the proceedings in the court below are erroneous, on the ground that the witness, *Hardy*, was excluded from testifying.