Duer, C. Judge,
now delivered the opinion of the court. The objections urged against the motion are, 1st. That Strang having been convicted of an infamous crime, is an incompetent witness. 2d. That if competent, he ought not to be admitted to testify, inasmuch as being an accomplice with the prisoner, he is admissible only from necessity or policy, at the discretion of the court, and would, if he testified, be entitled to a pardon.
1. The disability of Strang to give testimony is urged, m the first place, on the ground of the legal infamy resulting from his conviction. This infamy was formerly held to arise from two sources, a conviction of certain offences, and the infliction of certain penalties. The mere conviction, properly evidenced, of some crimes, was always sufficient, as it is at present, to render the offender infamous; whilst some penalties of a personally degrading character had also the same effect, whatever the crimes might be for which they were inflicted. But it is now settled, on better principles, that it is the crime, and not the punishment, which creates the infamy and destroys the competency of the witness. [1] (Co. Lit. 6 a. & b. 2. Hale, 277. Com. Dig. Testmoisne 5 Bull. N. P. 291. 1 Leach, 442. Peake’s Ev. 149. Bac. Abr. Ev. A. 6. Willes, 666. 2 Wils. 18. 2 Salk. 690.)
*745 At the present day, therefore, a conviction of treason, or felony, or of any species of the crimen falsi, will incapacitate the party convicted from giving evidence while it continues in force, without regard to the punishment inflicted. (Hawkins, b. 2, c. 46. 1 Phil. Ev. 16. 1 Chitty’s Crim. Law, 600, and authprities there cited.)
In order, however, to urge the disability with effect, it is necessary to prove the record of the judgment as well as of the conviction. [1] The sentence, says Chitty, must be produced as well as the conviction, lest any objection should have defeated it on arrest of this judgment. And the admission of the * witness himself will not suffice, without a copy both of the judgment and the conviction. [2] In these positions, the pther most approved modern elementary writers, Philips and Starkie, concur with Chitty, and they are abundantly supported by the authorities to which they severally refer. (1 Phil. Ev. 26. 2 Starkie, 716. 1 Cowp. 8. 4 Bur. 2283. 8 East, 77. 11 East, 309.)
So that Strang’s competency as a witness is not affected by his conviction merely; neither will it be destroyed, unless that conviction be followed up by judgment. [3] Nor will the circumstance of his being an accomplice with the prisoner, as the principal felon in that murder to which she is charged as accessory, vary the general rule in its application to this particular case.
The evidence of" accomplices has at all times been admitted either from a principle of public policy, or from judicial necessity, or from both. [4] They are no doubt requisite as witnesses in particular cases ; but it has been well observed that in a regular system of administrative justice, they are liable to great objections. “ The law,” says one of the ablest and most useful modem writers upon *746 criminal jurisprudence, “ confesses its weakness, by calling in the assistance of those by whom it has been broken. It offers a premium to treachery, and destroys the last virtue which clings to the degraded transgressor. On the other hand it tends to prevent any extensive agreement among atrocious criminals, makes them perpetually suspicious of each other, and prevents the hopelessness of mercy from rendering them desperate.” (Chitty’s Crim. Law, 82, 603, 769. Cowp. 334, 6. 1 Leach, 118, 120.) The general rule is, that a person who confesses himself guilty of a crime, is a competent witness against his partners m guilt; and on the trial of an accessory for a misdemeanor in receiving stolen goods under the statute, the principal felon is a competent witness ; the statute enacting that the accessory may be proceeded against, although the principal felon has not been convicted, and whether he be or be not amenable to justice. (1 Leach, 467. 2 East’s P. C. 782.) So, under another clause of the same statute, we have held *in the case at bar, that the accessory may be proceeded against, although the principal have not been sentenced; the statute enacting that if the principal felon be convicted, the accessory may be proceeded against in the same manner as if such principal felon had been attainted. (1 R. L. N. Y. 496.) [1]
In cases of felony, therefore, the principal is a competent witness against the accessory; and instances have occurred in this state, in which they have been admitted. I allude particularly to the cases referred to, of Jack Hodges, a negro, which occurred in the year 1819, before the late Mr. Justice Van Ness, at a special oyer and terminer for the county of Orange, and which I shall hereafter have occasion to state more at large. But in what manner, and under what circumstances, are accomplices admitted as witnesses against their associates? This inquiry brings me to the consideration of the second objection urged by the counsel for the prisoner, viz.
2. That Strang, if competent, is only admissible at the *747 discretion of the court, and would, if he testified the truth, be entitled to a pardon.
The practice of admitting accomplices to give evidence against their associates, was adopted from analogy to the old law of approvement; [1] which was, when a prisoner, arraigned on a capital charge, confessed the fact before he pleaded, and accused his coadjutors of the same offence. He must have been indicted, and in custody, and have desired to accuse his accomplices ; and must likewise have discovered upon oath, not only the particular offence for which he was indicted, but, all treasons and felonies which he knew of; and after all this, it was at ihe discretion of the court to assign him a coroner, and admit him as an approver or not. For if upon the trial of the appeal it appeared that he was a principal, and tempted the others, the court might reject him. When admitted, it must have appeared that what he discovered was true, and that he had discovered the whole truth, and if on the trial, the party accused was acquitted, judgment of death passed against the approver upon his own confession of the indictment. (Cowp. 335, Leach, 118.)
*The allowing of approvements, which was at all times in the discretion of the court, was, from the mischiefs and inconveniences attending it, at length superseded -by the modern practice of admitting .accomplices to give evidence ■ under an implied promise of pardon, on condition of their making a full and fair confession of the whole truth; that . is, of all the offences about which they might be questioned, , and of all their associates in guilt.
This implied promise arises from the consideration, that - the witness, who is not bound to ¿riminate himself, does so in order to discover greater offenders; and upon performance of the condition to the satisfaction of the court, he acquires an equitable title to a pardon. The practice in England is, where the accomplice is in custody, for the counsel for the prosecution to move that the accomplice be taken before the grand jury, pledging his own opinion .after *748 a perusal of the facts of the case, that his testimony is . , t- . ’ essential. It, however, an accomplice be taken before the r grand jury by means of a surreptitious order, the indictment will still be valid, as it seems to be a general rule, that the means by which evidence'was obtained will be no objection to the evidence itself. And in the case of the King v. Lee, (Northamp. Ass. 1818,) where .the question was, whether the accomplice who had been taken before the grand jury could legally be convicted, the judges were of opinion that ■he might, but some doubted. (Leach’s L. 184. 2 Starkie on Evid. 22, 3.)
It is not, however, a matter of course to admit an offender as a witness on the trial of his accomplices; not even after he has been so allowed by the committing magistrate, or examined by the grand jury; but a motion for this purpose must be made by the counsel for the prosecution; and the court, under all the circumstances of the case, will either admit or disallow such evidence as may most effectually answer the purposes of justice. (Per Buller, Just. Maidst. Ass. 1798. Cr. Cir. Comp. 51. 1 Phil. Evid. 30, 33.)
So long as, by the policy of the law, accomplices are deemed competent witnesses against their fellows, so long must a discretion in regard to admitting them be vested somewhere *or other in the government. It could not consistently with the nature of the power, or the course and character of judicial proceedings, be committed to the chief executive magistrate; nor could it with propriety, be entrusted to the public prosecutor, or any other inferior ministerial officer of justice, because,' strictly speaking, it is the exercise of a high judicial discretion, and the reasons for vesting it in the court, rather than in the committing magistrate or even the public prosecutor, is, that the admission of the party as a witness amounts to a promise by the court of a recommendation to mercy, upon condition of his making a full and fair disclosure of all the circumstances of the crime. In the case of the King v. Rudd, reported in Cowper, 331, the prisoner had been admitted by the police magistrate of London, as a general witness for the *749 crown, in the character of an accomplice against her associates as to all forgeries; and confessed that she had, on compulsion, signed one of three bonds suspected to have been forged by her coadjutors, the Perreaus, and denied having any knowledge or concern in regard to the other two bonds. But it appeared on the trial of Robert Perreau, that the prisoner had confessed herself guilty of forging one of these bonds also, and that her associate was innocent. Upon this she was committed to answer the forgery, and having obtained a habeas corpus, she applied to the court of king’s bench to be admitted to bail; but she was refused upon the ground that she had not made a full and fair disclosure of all she knew.
Lord Mansfield, in delivering the opinion of the court on that occasion, expressly declared that if she had come under circumstances sufficient to warrant the court in saying that she had a title of recommendation to mercy, they would bail her for the purpose of giving her an opportunity of applying for pardon; and his lordship referred with approbation to a case of an accomplice, upon trial before Mr. Justice Gould, the circumstances of which he stated as follows: “ An accomplice made a fair and full discovery to the satisfaction of Mr. J. Gould, who tried the other offenders ; the other witnesses who were called upon the trial, proved the identity of the accomplice by the description of his person, but failed *as to the identity of the other offenders ; and the jury, because they doubted as to the guilt of the others, acquitted them. The counsel on the part of the prosecution then contended that the accomplice ought to be tried ; but Mr. Justice Gould, under the circumstances of the case, was of a contrary opinion that is, he held, that the accomplice, having performed the conditions on which he was admitted as a witness, although he had failed to produce the conviction of his associates was nevertheless entitled to a recommendation for pardon; and he so ruled, as Lord Mansfield thought, “very rightly.” [1]
*750 The principle dedticible from the cases undoubtedly is, that an accomplice, although a competent witness against the Associates and partners of his" guilt, is nevertheless only admissible from reason of judicial necessity and policy, and in furtherance of the essential ends of public justice. And the question always addresses itself to the- discretion of the court; not to their judgment as tó the general competency of the witness, hut to their sound legal discretion, whether, upon a sound consideration of the facts and circumstances of the case, he" shall he permitted tb testify under an implied promise óf pardon; which vests in him an- equitable title thereto, if he speaks the truth,
That there have been cases in which accomplices have been thus admitted, is nót denied; and that of the negro Jack, already iñentióned as one of them. Jack had been convicted as á principal felon in the murder of one Richard Jennings, and before sentence, was called as" a witness for the péople on the trial of David Conkling, as an accessory before the fact of the same murder. No question arose as to his competency, nor does it distinctly appear from the printed report óf the trial, that any motion was made oñ the one side, or objection oñ the other, as to the character and circumstances uhdef which he Was called to testify. He seems to have beén admitted by universal consent, and it was even proposed by the counsel for the prisoner that he should he examined without oath; but the learned judge who presided at the trial, directed him to be sworn-, and admonished him that he should nót expécí or hope for pardon, though he should disclose all that he knew. But whether he were *permitted to testify by consent of all parties, or at the discretion of the court alone, is not material; he testified at all evénts in the charactér of an accomplice, *751 and it is very clear from the circumstances of the case that he was properly admitted. They were these : David Conkling and James Teed, who were both accessories before the fact in the murder of Richard Jennings, were brothers in law. Teed was the nephew of the deceased, and Conkling had married the sister of Teed. They had a controversy with Jennings respecting some land in which the latter prevailed ; and hence an animosity arose between the parties which eventuated in the murder of the uncle. To effect this, Jack, who was the servant of Conkling, was used as an instrument. He was ignorant and brutified, both from his condition and his habits. Having been supplied with liquor, to which he was addicted, and bribed by the promise of a large sum of money, and a safe conveyance out of the country beyond the pursuit of justice, he undertook and partially accomplished the work proposed to him by his master; and having shot the deceased without mortally wounding him, and having been present when Jennings was dispatched with a club by one Dunning, another of his associates, he was technically a principal in the murder, and as such was he indicted, tried and convicted; whilst Conkling, who, together with Teed, was a chief contriver and instigator of the whole affair, and directly interested in the destruction of Jennings, was technically an accessory: but the negro had not much more moral agency in the transaction than the musket in his hand; and his moral guilt, in comparison with that of his master, was scarcely greater. Under such circumstances he was called and admitted as a witness ; and on his testimony, corroborated by other evidence, was Conkling as well as Teed and Dunning convicted. The two latter were executed; the punishment of Conkling was commuted, by special act of the legislature, to imprisonment for life, and Jack was pardoned on the like condition. (L. N. Y. sess. 42, ch. 51.)
The facts of this case are more familiar to me from happening to have had the honor of a seat in the assembly at the time the bill for Jack’s pardon was pending in that house; *and although Conkling was, upon the recommendation of the judge, eventually included in it, yet Jack had been previ *752 ously recommended as entitled to pardon, both by the able and experienced judge who presided at the trial, and by the eminent counsel who conducted the prosecution.* The bill was framed in reference to Jack’s peculiar claim, the first section containing an absolute pardon, and the second providing specially for his confinement in the state prison during life; and I well remember that when it was objected that the judge had told him that he must not expect or hope for pardon, urging, in answer to it, and placing my vote for the bill distinctly on the ground that it was not in the power of the court to limit the operation of the law ; and that the person convicted having performed the condition on which the implied promise arose on the part of the government, was entitled to a pardon. And this doctrine we unanimously believe to be the established law of the land. It remains, therefore, only to apply it to the case at bar.
The motion now made, being thus addressed to our discretion, is to be regarded in the same light as if, instead of it, the public prosecutor had moved the court to suspend sentence upon Strang, that he might be admitted as a witness against the prisoner. And it is so to be regarded, because his competency after conviction rests on the possibility of the judgment against him being arrested, and the present conviction set aside for irregularity or error. It is moreover to be considered as if Strang had already been admitted as a witness, had testified for the people on the present trial, in the character of an accomplice, had told the whole truth to the satisfaction of the court, and by himself or his counsel now claimed of us to suspend the sentence of the law, and recommend him for pardon. And it is so to be considered, because the law presumes that if admitted to testify, he will speak the truth. • Now upon what principle of good faith, public morality, sound policy, substantial justice, equitable right, or strict law, could we deny this claim 1 Suppose him admitted to testify against the prisoner, and she acquitted or condemned, and the record of *753 his own trial to be removed, *by writ of certiorari to the . .... supreme court, and the conviction against him there to be quashed for error or irregularity in the proceedings; suppose a new trial granted to him on the ground, say, of the improper .admission of his confessions to the gaoler; or if this be not ground of exception, as not appearing on the face of the record, suppose the proceedings set aside upon some other good and sufficient cause, and upon the new trial the court should be of opinion against admitting those confessions, and the district attorney should then offer evidence of his confessions made whilst testifying as a witness against the prisoner; would not the counsel of Strang insist that they could not be given in evidence, without a violation of public faith and justice, as he had been induced to waive the protection of the law, and criminate himself only as the consideration or condition of an implied promise of recommendation to pardon from the court, and the equitable claim thence resulting to the mercy of the executive? Would not the court reject" the evidence of such confessions ? Could they be admitted consistently with the letter or spirit of any rale by which the confessions of a party are admissible against him; or consistently with our oaths to qdmister justice impartially according to law? We think not.
It may be objected, however, that in a case like the pres ent, there can be no certain assurance of a pardon; inasmuch as the power of granting pardons is vested by the constitution solely in the governor; and that the authority of the court extending no farther than the recommendation, it must after all rest with the executive, whether that recommendation be complied with or not. This is indeed true; but it by no means follows that where an implied pledge results from the conduct or proceedings of a co-ordinate department of the government, or is given even by its subordinate agents, acting in good faith within the scope of their authority, it will not be sanctioned by the executive. On the contrary, the legal presumption is, that the public faith will be preserved inviolate, the law respected, and an equitable claim founded upon both, ratified and allowed *754 Could a different supposition be for a moment tolerated, this court would nevertheless *be bound most scrupulously to discharge its own obligations as far as they extend, and as far as we have power. And if an accomplice perform the condition on which he is admitted as a witness for the people, according to its spirit, we hold ourselves bound in duty and in conscience, to redeem the promises which the law raises in his favor, to the very letter. When we have done this we have performed our duty, and are no further responsible for the consequences. If we are correct in these principles, the question as to the admission of Strang, is reduced to the simple inquiry, whether, in the sound exercise of the discretion vested in us, we believe that it would promote the ends of public justice to admit him as a witness on this trial, and thereby entitle him, if he speak the truth, to impunity, in the event even of the prisoner’s acquittal?
It has already been observed, that we are bound to presume that if admitted, he will speak the truth; and we are bound to presume farther that the counsel for the prosecution believe that he will do so, or else certainly they' would not have called him. We are therefore to determine whether, in the exercise of our judicial discretion, we ought, under the circumstances attending this murder, as developed on the trial of Strang himself, as well as on this trial, to promise our recommendation for pardon upon the chance of procuring the conviction of the prisoner at the bar. Let us examine the circumstances of this case in reference to the character and conduct of the respective parties, to enable us the better to decide this question.
From the evidence before the court, it appears that Strang is the son of a respectable farmer in the county of Dutchess, from whence he has been absent some time, and is now about thirty years of age, with an experience of the world and knowledge of mankind not usually acquired even at that age. That he is married and has deserted his wife. That he is naturally ingenious, shrewd, cunning, cool, resolute and hold. Not deficient in the information and ac quirements usual among persons of his condition, but rather superior to those who have enjoyed no greater advantages. *755 He entered *the family of Mr. Van Rensselaer, where the deceased and his wife boarded, about twelve months ago, under the feigned name of Joseph Orton, and represented himself as a single man. In this character, he seduced the affections of the prisoner and won her at all events to the gratification of his lust, if he did not render her subservient to his more guilty and treacherous purposes. By his own confession, he meditated the murder of Mr. Whipple for the space of six months before its perpetration. It is proved that the prisoner had considerable landed estate in her own right, and has but one child, a boy of about eight years old, to inherit it; and that Strang expressed a determination to have her if it cost him his life, and proposed to take her off with him to Canada. He not only contrived but executed this plan in its most fatal part, and but for his detection might have succeeded in the whole of his bloody plot. Whether she furnished the money knowingly or not, he bought the rifle; he watched the opportunity, seized it with promptness, and availed himself of it with adroitness, deliberation and coolness; and he shot the man. In short, he appears before us, not merely as the technical, but as the real principal in this foul transaction; nor as the instrument of the prisoner to get rid of the only obstacle to her gtiilty pleasures and treacherous designs; but as the betrayer of her virtue and honor, and the destroyer of her husband, in order to obtain possession of her property.
Whilst on the other hand, she appears to have been married to the deceased at a very early age, entirely in pursuance of her .own inclinations. She is not now more advanced than her twenty-sixth year; possessed of beauty and fortune, though without much education, and most lamentably defective in principle. Vain, weak, frivolous, wanton and inconstant in character; and in conduct, im prudent, silly, lewd, presumptious, treacherous, and guilty to a certain extent in the eye of the law; she was a fit instrument in the hands of an artful and designing villain; but destitute of those qualities which could have swayed the mind or controlled the actions of a man like Strang, or of anv other with whom she might have had illicit intercourse *756 Had the case *been reversed, and she presented not only as ^ woman destitute of principle and profligate in manners, but of greater experience, more strength of mind and energy of character, ill treated by her husband, or from her own or his defects of temper or conduct, living unhappily with him; cherishing the wish, and expressing the determination to get rid of him; had such a woman selected for her paramour a youth of inexperience, and by the seduction of her person and her fortune, led him to commit the murder; had the intelligence and temptation been hers, the weakness and the folly his; the court would not have hesitated to have admitted him as a witness for the people, and on his fall and fair disclosure of the facts, to have recommended him, as we must then have done, to mercy.
But as the matter stands before us, we have as little hesitation in rejecting his testimony as an accomplice, for we could never consent to recommend him for pardon. The prisoner may be guilty, to the full extent of the indictment; she is nevertheless to be presumed innocent until the contrary be shown beyond reasonable doubt. But her accomplice has already been convicted, and now awaits his sentence ; we know the full extent of his guilt, and know from the nature of things she cannot bé more guilty than he is, if every thing charged be proved against her. Why then should we select her for punishment in preference to him? Neither her age, her sex, the circumstances of the case, the essential purposes of justice, or the moral sense of mankind, would justify it. But suppose her innocent; suppose the insinuations against her in Strang’s confession to be groundless ; and every thing that he may have sworn to before the grand jury, who found the bill against the prisoner at the bar, equally unfounded; and even with Strang’s testimony she should be accquitted at the trial; yet if the court believed he spoke the truth, and he should insist upon his claim to our recommendation, it would be difficult to resist it, because it would be difficult to determine whether the verdict of the jury was rendered upon an absolute disbelief of the charge, or from the jury’s refusing credit to the uncorroborated testimony of the accomplice ; *757 and thus might he, the only guilty *party, escape punishment by the success of a deep laid artifice for procuring his admission as a witness. Or suppose her guilty, but acquitted, not from a disbelief of Strang’s story, but from a proper caution in the jury in not giving it implicit credit when uncorroborated by other proof, or from his being discredited on other legal grounds, extraneous to the transaction; yet would the court be bound to suspend the sentence, and recommend him for mercy, and thus, though the prisoner and himself might both be guilty, yet neither would be punished. To avoid all risk of this sort, and to prevent the hazard even of Strang’s escape, from the mere chance of convicting the prisoner, we should deem it, upon the whole, discreet to exclude the testimony, even had we less doubt in regard to the question we have discussed, than we profess to entertain. For the prisoner is entitled to the benefit of every doubt upon points of law, as well as upon questions of fact. But we are satisfied, both upon principle and authority, that Strang, standing before us, convicted as an accomplice with the prisoner, can only be admitted to testify against her at the discretion of the court; and from the facts and circumstances of the case, we are as clear that it would be an improper exercise of that discretion to admit him, and consequently that" the motion to that effect must be denied.
We are aware of the responsibility thrown on us upon this occasion. But this court shrinks from no responsibility cast upon it by the law. Were we to do so in this case, we should be knowingly guilty of a dereliction of duty, and thereby violate our oaths. We are aware, too, of the prejudice and exitement which this trial has produced, and which has in some measure manifested itself in the course of the proceedings. But we are bound to resist prejudice, and to oppose the shield of the law for the protection of the weak, and repress the influence and operation of human passions against those who are accused before us. Neither the voice of prejudice, nor the tumult of excitement, must be heard within these walls. We sit here as in the temple of justice, and in our administration at her altar, we *758 look not for the applause of men, but seek the favor and acceptance of the *Deity. Next to the approval of God and our consciences we are emulous of the esteem of the wise and good ; and fallible as we are, we are unconscious ’ on this occasion of being influenced by any other motive than that of faithfully, impartially and firmly administering the law; and if we have erred in the conclusion at which we have arrived, we shall at least have the consolation of knowing that we have erred on the side of mercy, (a)
Motion denied.

 Arch. Crim. Prac. by Waterman, 155. N. 1. A person convicted of an infamous, in one State, was held incompetent as a witness in another, under the Constitution of the United States, and the act of Congress declaring the effect of the records of one State in every other. State v. Candler, 3 Hawks, 393. State v. Ridgley, 2 Haw. & Mc. H. 120. Clarks Leese v. Hall, id. 378 Coles Lease v. Cole, 1 Haw. & I. 378. But it should appear that the foreign offence would disqualify at common law or by some statute of the country. 2 Haw, & Mc. H. Supra. A different doctrine prevails in Massachusetts. See 1 Co wen & Hill’s Notes to Phil. Ev. 10.

 Castellano v. Peillon, 2 Mart. Low. R. 466. Skinner v. Perot, 1 Ashm. 57.

 Orr’s case. 5 City Hall, Rec. 181. See also 1 Cowen & Hill’s Notes to Phil. Ev. 11, and authorities there cited, 1 Phil. Ev. 28.

 1 Cowen & Hill’s Notes to Phil. Ev. 10.

 Byrd v. The Commonwealth, 2 Ver. Cas. 490. M’Niff’s Case, 1 C. H Rec. 8, U. S. v. Henny, 4 Wash. C. C. 428.

 Revised Statutes, 4th ed. 911, § 49.

 1 Phil. Ev. 28. note 3. Sir P. Crosby’s case. 1 Hal. P. C. 303.

 In Hall’s case, 1 C. H. Rec. 57, 59, it was said, a conviction may follow, though, the testimony of the accomplice stands uncorroborated. Quers. And See U. S. v. Tom Jones, 2 Wheeler’s Crim. Cas. 451 to 461 *750 Although the satne rule is recognized in Englahd, it haá beeii só much meliorated iñ thé practice, it may now hé said, that unless the testimony oí an accomplice is corroborated, id some material part by unimpeachable evidence, the judge should advise the jury to acquit the prisoner, and if ho should neglect so to* advise thé jury, dr thé jury disregard stich advice, and a conviction followed) the conviction would be in either case at variance with the authorities, Mid be regarded as illegal. See 1 Phil. Ev 30, et. seq.

M. Van Buren, S. R. Betts, and John Duer, Esqra.

 Though where an accomplice, admitted on motion, as a witness, is, if he conduct himself with propriety, and tell the truth, entitled to a recommendation by the court for a pardon; yet he may be prosecuted, convicted, and sentenced for any crime other than the one concerning which he is received to testify. Thus, where the accomplice was received at the assizes, as a witness on a trial for robbery, he was prosecuted and convicted at the same assizes for burglaryand held well: the 12 judges on consultation, holding that, in such case, it rested in the discretion of the judge whether he would recommend the witness to meroy. (Rex v. Lee, Russ. & Ry. Cr. Cas. 361.) So where the king’s evidence, in a case of burglary, turned out at the assizes to be unworthy of credit, and he was, at the same assizes, convicted of sheep-stealing, and sentenced, but the sentence respited by the judge fpr the opinion of the 12 judges, they held the conviction right, saying, the carrying the sentence into effect, they thought, was a question entirely for the discretion of the judge of assize, (Rex v. Brunton, Russ. & Ry. Cr. Cas. 454.) So the judges will not, in general, admit an accomplice as king’s evidence, though applied to for that purpose, in the usual way, by the counsel for the prosecution, if it appear that such accomplice is charged with any other felony than that on the trial of which he is to be a witness. Resolved in several cases, (2 Carrington & Payne, 411.)