(126 App. Div. 89.)

## PEOPLE v. FABIAN.

(Supreme Court, Appellate Division, First Department.   May 15, 1908.)

1. ELECTIONS—QUALIFICATIONS OF VOTERS—CONVICTION OF CRIME.

Const. 1894, art. 2, § 2, providing that the Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime, authorizes the Legislature to exclude from the right of suffrage a person convicted of a felony, but against whom sentence has not been pronounced, and who has not been actually imprisoned.

2. SAME.

Const. 1894, art. 2, § 2, provides that the Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime.   Election Law, Laws 1896, p. 913, c. 909, § 34, as amended by Laws 1901, p. 1669, c. 654, § 2, adding thereto subdivision 10, provides that no person who has been convicted of a felony shall have the right to vote unless he shall have been pardoned and restored to the rights of citizenship.   Laws 1901, p. 1025, c. 371, § 4, repeals Pen. Code, tit. 5, § 41l, which made any person convicted of an infamous crime and sentenced or committed to a state prison, who voted, guilty of a misdemeanor, unless he had been pardoned and restored to the rights of citizenship; and section 5 provides that Pen. Code, tit. 5, § 41m, as amended, is designated as section 41l, and is amended so as to make any person who knowingly votes when not qualified guilty of a felony.   *Held,* that a person convicted of a felony, but against whom sentence had not been pronounced, the same having been suspended, was disqualified to vote, and that such a person, knowingly voting, was guilty of a felony.

Clarke and Houghton, JJ., dissenting.

Appeal from Court of General Sessions, New York County.

George Fabian was indicted for voting at an election in violation of Election Law, Laws 1901, p. 1025, c. 371, § 5, in amendment of Pen. Code, tit. 5, relating to crimes against the elective franchise. From a judgment sustaining a demurrer to the indictment, the people appeal.   Reversed, demurrer overruled, and cause remitted to the Court of General Sessions.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

John Palmieri, for the People.
Robert L. Luce, for respondent.

INGRAHAM, J.   The defendant was indicted for voting at an election, not being qualified to vote.   The indictment alleged: That the defendant, with one John N. Clark, was indicted for burglary in the third degree.   Upon the trial of said indictment on February 21, 1905, the jury rendered a verdict finding the defendant and Clark guilty of the crime of burglary in the third degree.   That the court ordered that the judgment against the defendant for the felony and burglary in the third degree, whereof he was so found guilty, should be suspended, and afterwards, to wit, on Tuesday, the 5th of November, 1907, there being held a general election throughout the state of New York,

the said Fabian, the defendant, for the purpose of voting at said election, did personally present himself and appear before the inspectors of election of the Eighteenth election district of the Thirteenth assembly district of the county of New York, at a meeting of the said inspectors of election then being duly held for the purpose of said election at the duly appointed and designated polling place of the said election district, and did then knowingly vote at said election. in the said election district, not being then and there qualified therefor, in not having the right then and there to vote thereat, in this, to wit: That he, the said George Fabian, had theretofore been by a verdict of a jury so as aforesaid found guilty of the said crime and felony of burglary in the third degree, after which said verdict judgment had been so as aforesaid suspended, all of which he, the said George Fabian, then and there well knew, against the form of the statute in such case made and provided. The question, therefore, is presented of whether a person convicted of a felony by the verdict of a jury, where the judgment therein has been suspended and no judgment entered upon the conviction, is incapable of voting in the state of New York.

The Constitution of this state that first provided for a disqualification to vote because of the conviction of a crime is article 2, § 2, of the Constitution of 1822. After prescribing the qualification of voters, section 2 of that article provided that:

"Laws may be passed excluding from the right of suffrage persons who have been or may be convicted of an infamous crime."

Under the authority thus conferred the Legislature, by section 3, tit. 1, c. 130, p. 109, of the Laws of 1842, provided that no person who shall have been convicted of an infamous crime, deemed by the laws of this state a felony, at any time previous to an election, shall be permitted to vote thereat, unless he shall have been pardoned before or after his term of imprisonment has expired, and restored by pardon to all the rights of a citizen. Section 23, tit. 4, p. 120, of the same statute, provided that if any person so convicted (of an infamous crime) "shall vote at any such election, unless he shall have been pardoned and restored to all the rights of a citizen, he shall be deemed guilty of a misdemeanor." It was also provided by section 13, tit. 7, p. 126, that any person not duly qualified to vote under the laws of this state, who shall knowingly vote or offer to vote at any general or special town or charter election in this state, shall be adjudged guilty of a misdemeanor.

This statute remained in force until the adoption of the Constitution of 1846. Article 2 of that Constitution provides for the qualification of voters, and section 2 of that article provides that:

"Laws may be passed excluding from the right of suffrage all persons who have been or may be convicted of bribery, larceny or of any infamous crime."

This section was amended in 1874, so that the provision was continued as follows:

"The Legislature at the session thereof next after the adoption of this section shall and from time to time thereafter may enact laws excluding

from the right of suffrage all persons convicted of bribery or any infamous crime." Laws 1874, p. 925, Res. No. 1.

In compliance with this mandate the Legislature by chapter 138, p. 122, of the Laws of 1875, amended section 23, tit. 4, c. 130, p. 120, of the Laws of 1842, so as to provide:

"Any person, who, having been convicted of bribery or any infamous crime, shall vote at any election, unless he shall have been pardoned and restored to all the rights of a citizen, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be imprisoned in the county jail for the term of six months."

This provision of the act of 1842, as amended by the act of 1875, was re-enacted as section 41*l* of the Penal Code, as follows:

"Any person who has been convicted of an infamous crime, and has been sentenced or committed therefor to a state prison or penitentiary who votes at any election, unless he shall have been pardoned and restored to all the rights of a citizen, is guilty of a misdemeanor."

And section 13, tit. 4, p. 118, of the Acts of 1842, which provided that any person who knowingly votes or offers to vote at any election or town meeting, when not qualified, was guilty of a misdemeanor, was also continued as section 41m; and by chapters 77, 282, pp. 173, 511, of the Laws of 1894, the section was amended so that a violation of this section was made a felony.

Under the provisions of section 41*l* of the Penal Code there was first introduced into the statute a provision qualifying the former provision making it a misdemeanor for a person convicted of an infamous crime to vote, by providing that he must not only have been convicted of such a crime, but he must also have been "sentenced or committed therefor to a state prison or penitentiary"; and, although a person who was disqualified from voting because of such a conviction would apparently have been within the terms of section 41m, as by the express provision of the election law, he was not qualified to vote, there having been, both under the act of 1842 and the provisions of the Penal Code, a special provision regulating the punishment of a person voting after a conviction of an infamous crime, section 41*l* of the Penal Code would have controlled, so that a person convicted of an infamous crime would not have been guilty of a crime by voting, unless he had been also sentenced or committed therefor to a state prison or penitentiary.

By the Constitution of 1894, article 2 provides for the qualification of persons who may be entitled to vote at an election. Section 1 provides for the qualification of voters. Section 2 provides for the persons excluded from the right of suffrage, and in that section it is provided that:

"The Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime."

By the general election law of 1892 (chapter 680, p. 1602, Laws of 1892), there was a general revision of the election law of this state; and by subdivision 10 of section 24 it was provided that no person convicted of bribery or of an infamous crime punishable by imprison-

ment in a state prison shall vote at an election or town meeting, unless sentenced upon such conviction to a reformatory, or unless he shall have been pardoned before or after the expiration of his term of imprisonment, and restored by pardon to all the rights of a citizen. After the adoption of the Constitution of 1894, the election law of 1896 was passed (chapter 909, p. 913, Laws of 1896), and chapter 680, p. 1602, of· the Laws of 1892 was repealed. Subdivision 10 of section 34 of that act, as amended by subdivision 2, c. 654, p. 1669, of the Laws of 1901 (the election law now in force), provides that:

"No person who has been convicted of a felony shall have˙ the right to register for or vote at any election, unless he shall have been pardoned and restored to the rights of citizenship."

And in the same year section 41 of the Penal Code was amended by chapter 371, p. 1025, of the Laws of that year. That act was entitled:

"An act to amend the provisions of title 5 of the Penal Code, relating to crimes against the elective franchise."

By section 4, section 41l of said title of the Penal Code "is hereby repealed"; and section 5 provides that section 41m of said title, as amended, was hereby designated as section 41l, and was amended so as to read as follows:

"Any person who [subdivision 1] knowingly votes or offers or attempts to vote at any election, primary election or town meeting, when not qualified; or * * * [subdivision 5] being an inhabitant of another state or county, votes or offers or attempts to vote at an election, primary election or town meeting in this state, or permits, aids, assists, procures, commands or advises another to commit or attempt any act named in this section, is guilty of a felony, punishable by imprisonment in a state prison not less than one nor more than five years."

It was this section of the Penal Code as thus amended under which the defendant was indicted.

There are two questions presented: First, whether under this provision of the Constitution, in force at the time of this amendment of the Penal Code, the Legislature was authorized to disqualify a person against whom there had been a verdict of a jury convicting him under an indictment for a felony, but where no judgment had been entered and who had not been actually imprisoned; and, second, whether the Legislature, having that power, had exercised it.

I think it quite clear that the Legislature had the power to determine that a conviction without judgment would disqualify a person from voting. The Constitution expressly preserves to all persons charged with a crime the right to a trial by jury. Section 2, art. 1. By section 6 of the same article no person can be held to answer for an infamous crime unless on the presentment or indictment of the grand jury. Thus no person can be punished for a crime except upon conviction by a jury; and when the Legislature was directed to exclude from the right of suffrage all persons convicted of bribery or of an infamous crime, no one could be so excluded except upon a conviction of the offense by a jury; and when the Constitution said that

"the Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime" there was for the first time a mandate to the Legislature which required it to exclude from the right of suffrage all persons who had been so convicted. The object of this provision was, not to impose an additional penalty for the crime, but to protect the right of suffrage. It was the verdict of the jury that established the guilt of the person charged with the crime, and it seems to me that it was intended to provide that when the guilt of a person had been established he should not thereafter be allowed to vote.

The question is then presented as to whether the Legislature has excluded from the right of suffrage a person who has thus been convicted by the verdict of a jury. As before stated, by section 41*l* of the Penal Code, in force when the Constitution of 1894 was adopted, no crime was committed unless a person who had been convicted of an infamous crime and had been sentenced or committed therefor to a state prison or penitentiary had voted at an election. After the adoption of the Constitution of 1894, where the direction to the Legislature was mandatory, this provision of the Penal Code was repealed, and there was substituted for it a provision that any person who knowingly votes, or offers or attempts to vote, at an election, not qualified, is guilty of a felony. The indication of the legislative intent seems to me to be clear. It imposed a penalty upon every person who knowingly votes, or offers to vote, at an election, when not qualified to vote; and at the same session of the Legislature there was passed the general election law which, by subdivision 10 of section 34 (chapter 654, p. 1669, of the Laws of that year) provided that no person who has been convicted of a felony shall have the right to register or vote at any election unless he shall have been pardoned and restored to the rights of citizenship, and that the Legislature intended to repeal the provision which only made it a crime for a person who had been convicted and imprisoned to vote at an election by having the qualification to vote to be determined by the general election law which was passed at the same session of the Legislature, and then that every one who was not qualified under the election law, but who voted or attempted to vote, should be guilty of a felony, and then by the election law provided that no person who had been convicted of a felony should have the right to vote or attempt to vote at any election unless he shall have been pardoned.

The guilt or innocence of a person charged with a crime depends upon his conviction by a jury, and the verdict of the jury necessarily determines his guilt or innocence of the crime charged. When the judgment shall be entered upon that conviction, or when the imprisonment shall actually commence, is largely within the discretion of the court. It certainly could not have been intended that, where an election should occur between the time of the conviction by the jury and the entry of the formal judgment upon such conviction, the convicted person should be allowed to vote. The suspension of a sentence is nothing more than the postponement by the judge before whom the case was tried of the entry of the judgment and the commencement

of the imprisonment prescribed by law. There can be no doubt but that the defendant can now or at any time be called up and sentence imposed upon him for the crime for which he has been convicted by the jury. He has not been pardoned or relieved from the consequences of his violation of law. The fact of the conviction by the jury remains.

An examination of the provisions of the Penal Code shows that there is a clear distinction between a conviction by a jury and the judgment or punishment which follows. By section 9 of the Penal Code it is provided that:

"The punishment prescribed by this Code can be inflicted only upon a legal conviction in a court having jurisdiction."

Section 688a of the Penal Code provides that a person who, having been three times convicted within this state of felonies or attempts to commit felonies, or under the law of any other state, government, or country of crimes which, if committed within this state, would be felonies, commits a felony within this state, shall be sentenced upon conviction as provided for in the section. Section 694 of the Penal Code provides that where a person is convicted of two or more offenses, before sentence has been pronounced upon him for either offense, the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first or other prior term or terms of imprisonment to which he is sentenced. In those cases it seems quite evident that the conviction referred to is the conviction by a jury, and not the formal sentence or judgment pronounced upon the conviction. Section 390 of the Code of Criminal Procedure also recognizes the same distinction. It provides that if the defendant has committed a crime, and there is a reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only. Section 395 provides that a confession of a defendant is not sufficient to warrant his conviction without additional proof that the crime charged has been committed. Sections 396 and 397 provide that upon a trial for treason the defendant cannot be convicted except upon the testimony as prescribed in these two sections. Section 399 provides that a person cannot be convicted on the testimony of an accomplice unless corroborated; and section 750 provides that on an appeal from the Court of Special Sessions for the purpose of an appeal in all cases a conviction for a criminal offense shall be deemed a final judgment, although sentence shall have been suspended by the court in which the trial was had, or otherwise suspended or stayed.

It seems to me quite evident that when conviction is spoken of there is intended the actual finding of the jury that the defendant is guilty, and that since the amendment of the Penal Code in 1901 any one who has been convicted by a jury of a felony is disqualified to vote unless he has been pardoned, and that when such person knowingly votes or offers to vote at an election he is guilty of a crime.

It follows that the judgment appealed from must be reversed, and

the demurrer overruled, and the case remitted to the Court of General Sessions to be proceeded with according to law.

PATTERSON, P. J., and LAUGHLIN, J., concur.

PATTERSON, P. J. (concurring). I concur with Mr. Justice INGRAHAM in the views he has expressed concerning the meaning to be attached to the word "conviction," as used in the provision of the election law (chapter 654, p. 1668, Laws of 1901) relating to the disqualification of voters. I concur with his view that antecedent provisions, which required both conviction and sentence for crime as necessary to create the disqualification, were repealed, and that conviction alone of crime is all that is now required by law. To the word "conviction," as the statute now stands, should be assigned its primary, original, and ordinary meaning, which is the finding of a person guilty of an offense with which he has been charged, either by the verdict of a jury or on his own confession. 4 Black. Com. 362. Bishop on Statutory Crimes, § 348, says:

"The word 'conviction', ordinarily signifies the finding of the jury, by verdict, that the prisoner is guilty. When it is said there has been a conviction, or one is convict, the meaning usually is, not that sentence has been pronounced, but only that the verdict has been returned. So a plea of guilty by the defendant constitutes a conviction of him."

The findings of the jury is the establishment of guilt in due course of law. The suspension of sentence in no way disturbs that finding, but merely postpones indefinitely the imposition of punishment.

The question arising under the Election Law is not one affecting the general civil status or rights before sentence is passed of a person found by a jury to have been guilty of crime, and so the cases in which it has been held that a person found guilty by the verdict of a jury, but not sentenced, is still qualified to be a witness, do not apply to the present case. The condition of adjudged infamy following a conviction of crime was not indelibly stamped upon a person until sentence had been passed upon him pursuant to the verdict. It was the general condition of infamy which disqualified a person from being a witness. Here, however, is a special statute relating to a particular subject, namely, the disqualification of voters, and designed to preserve the purity of election; and as to that particular subject the statute has prohibited one convicted of crime from exercising the right of suffrage. The imposition of a penalty is to render the purpose of the legislation effective.

The consideration of the statutes and the commentary upon them made by Mr. Justice INGRAHAM in his opinion to my mind lead to the necessary conclusion that in the provision of the last statute cited by him the Legislature, in the use of the word "conviction," intended that that word should have its primary and ordinary meaning, namely, an establishment of guilt either by confession or the verdict of a jury.

INGRAHAM and LAUGHLIN, JJ., concur.

CLARKE, J. I dissent. It is true that the word "conviction" in popular parlance, and, indeed, in code and statutory provisions, often

means the verdict of a jury finding the defendant guilty of that where-of he is charged.   It is usually applied in criminal proceedings, but is sometimes made use of in civil, as hereinafter pointed out.   But I have reached the conclusion that the weight of authority sustains the proposition that, where pains, penalties, fines, forfeitures, and dis-qualifications follow upon conviction, then "conviction" means the sentence or judgment of the court entered upon the finding of the jury and proved by the record.

If that is not so, the position of the defendant is this:   He stands indicted for a felony for having voted at a general election in 1907, not then being qualified to vote because, on the 21st of February, 1905, a jury had rendered a verdict finding him guilty of the crime of bur-glary in the third degree.   Sentence upon that verdict was suspended, it must be assumed for good reason—something of weight in defend-ant's favor.   He had no way in which he could review the trial.   No appeal would lie.   No judgment was entered from which he could appeal.   Section 517, Code of Criminal Procedure; People v. Mark-ham, 114 App. Div. 387, 99 N. Y. Supp. 1092.   In my opinion it is extremely doubtful whether he could be pardoned.   Article 14, § 5, of the Constitution provides that:

"The Governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of im-peachment. * * * He shall annually communicate to the Legislature each case of reprieve, commutation or pardon granted, stating the name of the con-vict, the crime of which he was convicted, the sentence and its date, and the date of the commutation, pardon or reprieve."

This constitutional provision seems to me to mean that a pardon may only be granted after sentence upon a verdict of guilty; that is, a conviction in legal parlance.   So, upon an unfinished legal proceed-ing, which cannot be reviewed upon appeal, nor the claimed conse-quences relieved from by executive clemency, a disability, a dis-qualification, is imposed for life.   "It is true that the privilege of suffrage is conferred, and the right to exercise it is guaranteed, by the Constitution," said Folger, J., in People ex rel. Furman v. Clute, 50 N. Y. 451, 10 Am. Rep. 508.   Article 1, § 1, of the Constitution provides that:

"No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Article 2, § 2, "Persons Excluded from the Right of Suffrage," first provides that no person who shall promise or receive any money, etc., as compensation for giving or withholding a vote at an election or who shall make a bet upon the result thereof "shall vote at such election," and provides for a challenge for such cause, and for the exaction of an oath by the elector that he has not done the things pro-hibited.   It then provides:

"The Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime."

In the Constitution of 1822 the language was:

"Laws may be passed excluding from the right of suffrage persons who have been or may be, convicted of infamous crimes."

In the Constitution of 1846 the language was:

"Laws may be passed, excluding from the right of suffrage all persons who have been or may be convicted of bribery, larceny or of any infamous crime."

As the phrase "convicted of any infamous crime" appeared in all of these Constitutions, and so is to be taken as a mere continuance of the provision, and not as a new enactment in the present Constitution, we are to inquire what was the meaning of the words when put into the Constitution in 1822. The meaning of said word under the common law, then in force, arose upon questions involving the competency of witnesses. In People v. Herrick, 13 Johns. 83, 7 Am. Dec. 364, in 1816, Spencer, J., said:

"It is laid down as an axiom by almost all the writers on evidence that the party who would take advantage of the exception that a witness has been convicted of a crimen falsi must have a copy of the record of the conviction ready to produce in court."

In People v. Whipple, 9 Cow. 707, in 1827, one Strang had just been convicted by a verdict of a jury as a principal in the murder of which Mrs. Whipple, the prisoner at the bar, stood charged as an accessory before the fact. The district attorney moved that he should be brought up and examined as a witness on the part of the prosecution. Duer, J., said:

"The objections urged against the motion are, first, that Strang, having been convicted of an infamous crime, is an incompetent witness. * * * The disability of Strang to give testimony is urged, in the first place, on the ground of legal infamy resulting from his conviction. This infamy was formerly held to arise from two sources—a conviction of certain offenses, and the infliction of certain penalties. The mere conviction, properly evidenced, of such crimes, was always sufficient, as it is at present, to render the offender infamous; whilst some punishments of a personally degrading character had also the same effect, whatever the crimes might be for which they were inflicted. But it is now settled, on better principles, that it is the crime, and not the punishment, which creates the infamy and destroys the competency of the witness. * * * In order, however, to urge the disability with effect, it is necessary to prove the record of the judgment, as well as of the conviction. The sentence, says Chitty, must be produced, as well as the conviction, lest any objection should have defeated it on arrest of judgment. And the admission of the witness himself will not suffice, without a copy both of the judgment and the conviction. In these positions the other most approved modern elementary writers, Phillips and Starkie, concur with Chitty, and they are abundantly supported by the authorities to which they severally refer. 1 Phil. Ev. 26; 2 Starkie, 716; 1 Cowp. 8; 4 Bur. 2283; 8 East, 77; 11 East, 309. So that Strang's competency as a witness is not affected by his conviction merely; neither will it be destroyed unless that conviction be followed up by judgment."

The word "conviction" has been used in the statutes of this state in reference to civil actions. In 2 Rev. St. (1st Ed.) p. 146, pt. 2, c. 8, tit. 1, § 49 ("Marriage after Divorce for Adultery"), the language is:

"But no defendant convicted of adultery shall marry again until the death of the complainant."

2 Rev. St. p. 146, § 48, provides that:

"A wife being a defendant, in a suit for divorce brought by her husband, and convicted of adultery, shall not be entitled to dower in her husband's real estate, or any part thereof. * * *"

Pitts v. Pitts, 52 N. Y. 593, was an action for partition. One Rachel demanded her inchoate dower. The husband resisted upon the ground that he had commenced an action for absolute divorce against his wife, which had been referred to a referee, and the referee had found that the wife had been guilty of an act of adultery. But the referee also found that the husband had condoned the offense and with full knowledge cohabited with defendant, and directed a dismissal of the complaint. Allen, J., said:

"A wife can only be barred of dower by a conviction of adultery in an action of divorce, and by the judgment of the court in such actions. 2 Rev. St. p. 146, § 48; 1 Rev. St. (1st Ed.) p. 741, pt. 2, c. 1, tit. 3, § 8. The loss of dower is a part of the penalty for the offense, and follows the judgment. A forfeiture of dower cannot be established by proof of adultery, or by a verdict or judgment in any other action. The proof or admission upon the record of adultery in an action to recover dower will not defeat the action under the statutes of this state."

Schiffer v. Pruden, 64 N. Y. 47, was an action for specific performance of a contract for the purchase of real estate. Title was rejected upon the ground that plaintiff's immediate grantor had a wife living who had not joined in the conveyance. In answer plaintiff insisted that in an action for absolute divorce it had been found that she had committed adultery. It further appeared, however, that in the same action the referee had found that the husband had also committed adultery, and hence complaint had been dismissed. Folger, J., after alluding to the provisions of the Revised Statutes, said:

"He contends that the finding of fact of the referee above mentioned is a conviction of her adultery, and that she is thereby barred of or lost her right to be endowed in these lands. He has argued as though any conviction in any action—that is (as he interprets the word conviction), any finding of fact or any verdict that a wife has been guilty of adultery—will take from her her title to dower. * * * We cannot agree that the word 'conviction,' in the place in which it is found, means only the establishing her adultery as a fact by proof. We think that it is charged with a fuller meaning that, upon the proof and finding or verdict of her adultery, the court has given judgment of divorce against her, and dissolved the marriage between her and her husband. * * * Doubtless the word 'conviction' ordinarily signifies the finding of the jury by a verdict that the accused is guilty. Yet the word sometimes denotes the final judgment of the court. * * * Thus the case of a witness rendered incompetent to testify by his conviction of treason, felony, or crimen falsi; but to shut him from the witness box his conviction must be shown by a judgment. People v. Herrick, 13 Johns. 82, 7 Am. Dec. 364; People v. Whipple, 9 Cow. 707. See, also, Keithler v. State, 10 Smedes & M. (Miss.) 193; 1 Den. Cr. Cas., where Pollock, B., says: 'A verdict of a jury in a civil cause is not evidence without judgment.'"

In Blaufus v. People, 69 N. Y. 107, 25 Am. Rep. 148, the question was as to the comptency of a witness who had been indicted for perjury. The jury had found him guilty, and he was then in custody awaiting sentence upon that verdict. Folger, J., said:

"We have lately in civil cases been called upon to construe statutes of similar import. We have held in them that there was no conviction merely upon the finding of the question of fact, and that there must also be a judgment of the court. These cases arose under the acts relating to dower and the forfeiture of it by adultery. * * * We do not think that it is different under the criminal statutes involved in this case. * * * In Lee v. Gansel, Cowp. 3, Lord Mansfield lays it down that 'a conviction upon a charge of

perjury is not sufficient, unless followed by judgment.' I know of no case, he says, 'where a conviction alone has been an objection, because upon motion on arrest of judgment it may have been or may be quashed.' * * * A kindred rule is that a plea of autrefois convict can be proven only by the record; and the indictment, with the finding of the jury, etc., indorsed by the proper officer is not sufficient, although it appear that no record has been made up. Rex v. Bowman, 6 Car. & P. 99. * * * People v. Herrick, 13 Johns. 82, 7 Am. Dec. 364, is always considered an authority to this point. People v. Whipple, 9 Cow. 707, is express."

In People v. McCloin, 91 N. Y. 241, Ruger, C. J., said:

"It is claimed that Banfield was rendered incompetent to testify as a witness in the case by virtue of the provisions of the Revised Statutes (volume 3 [Banks' 6th Ed.] p. 994, pt. 4, c. 1, § 43, tit. 7), the essential portions of which read as follows: 'No person sentenced upon a conviction for felony, shall be competent to testify in any cause, matter or proceeding, civil or criminal, unless he be pardoned by the Governor or by the Legislature, except in the cases specially provided by law.' It is claimed that section 832 of the Code of Civil Procedure, which was in force at the time of the commission of this crime, and which reads as follows: 'A person who has been convicted of a crime or misdemeanor is notwithstanding a competent witness in a civil or criminal action, or special proceeding, but the conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer to such a question'—does not restore the competency of the witness, because the disqualification imposed by the foregoing section of the Revised Statutes follows only upon a 'sentence based upon a conviction for a felony,' whereas the subsequent enabling statute, embodied in section 832 of the Code of Civil Procedure, relieves only those who have been disqualified by a conviction of a crime or misdemeanor, leaving, as it is claimed, those who have been tried, convicted, and sentenced still subject to the exclusion pronounced by the Revised Statutes. It is hardly conceivable that this construction can be seriously urged. Both at common law and by statute a witness becomes disqualified only after sentence rendered upon a conviction for felony. People v. Whipple, 9 Cow. 707; People v. Herrick, 13 Johns. 82, 7 Am. Dec. 364. When it is considered that a mere conviction, not followed by a sentence, never worked a disability, it will be seen that the construction contended for by the plaintiff in error would deprive section 832 of the Code of Civil Procedure, as well as section 714 of the Penal Code, of any meaning or effect whatsoever. * * * The language used in section 832 to describe the object intended to be accomplished is that which has obtained invariable usage, not only in the Reports, but with text-writers, and is there used according to the signification given to it by legal writers. It was, therefore, 'an accurate legal description of such a disqualification to say that it is produced by a conviction of a felony.' It is the depravity of nature evidenced by the conviction that creates the disability, and is the only cause of that disability. 'It is the infamy of the crime, and not the nature of the punishment, which destroys competency.' 1 Wharton's Criminal Law, 760. While the term 'disqualified by a sentence for crime,' or similar words, are never found in the text-books or Reports, the language used in section 832 is invariably employed to describe the disability referred to. Jackson v. Osborne, 2 Wend. 555, 20 Am. Dec. 649; People v. Herrick, 13 Johns. 82, 7 Am. Dec. 364; Hilts v. Colvin, 14 Johns. 182. The disqualification, though entirely based upon the conviction, yet in order to preclude the possibility that the conviction may have been nullified by a motion and arrest or other proceeding, is by the Revised Statutes required to be followed by a sentence in order to become effectual. There is not one disqualification produced by a conviction, and another by a sentence, but both conviction and sentence together produced one and the same disqualification. The removal of the cause of disqualification necessarily restores the competency of the witness, without reference to the fact as to whether he was sentenced or not. It was evidently the inten-

tion of the Legislature to remove the disqualification in question, and it is our duty in construing this statute to give effect to that intention. From the irreconcilable repugnancy which exists between these acts, the inference inevitably follows that the provisions of the Revised Statutes were intended to be repealed by the enactment of the Code of Civil Procedure."

See, also, People v. Sullivan, 34 App. Div. 544, 54 N. Y. Supp. 538.

In People ex rel. Forsyth v. Court of Sessions, 141 N. Y. 294, 36 N. E. 388, 23 L. R. A. 856, it was said:

"The suspension of the sentence simply postpones the judgment of the court temporarily or indefinitely, but the conviction and liability following it and all civil disabilities remain and become operative when judgment is rendered."

From the foregoing authorities, and many in other jurisdictions which it does not seem necessary to cite, it seems to me that it is a fair conclusion that, where disabilities, disqualifications, and forfeitures are to follow upon a conviction, in the eye of the law it is that conviction which is evidenced by sentence and judgment, and that where sentence is suspended, and so the direct consequences of fine and imprisonment are suspended or postponed temporarily or indefinitely, so also the indirect consequences are likewise postponed. It seems to me that where the word "conviction" is construed to mean verdict, and it is so construed at times, that construction has been in the interest of the defendant, but when that interest requires the word to mean sentence or judgment that construction has been adopted.

For these reasons I conclude that the judgment appealed from, sustaining the demurrer of the indictment, should be affirmed.

HOUGHTON, J., concurs.