ISAAC BOWDEN *v.* THE STATE.

CRIMINAL PROCEDURE. — Appellant and one A. were jointly indicted, in 1872, on a charge of burglary. The district attorney, with the concurrence of the district judge, entered a *nolle prosequi* as to appellant upon an

agreement between him and the district attorney that appellant should regularly attend court and testify as a witness for the state on the trial of A., and appellant entered into a recognizance so to do. At the succeeding term of the court appellant was again indicted for the same offense. To this indictment he pleaded the agreement both in abatement and in bar; but the pleas were stricken out by the court below on a general demurrer interposed by the district attorney, and the appellant was placed on trial on his plea of "not guilty," which resulted in his conviction. *Held*, error. The appellant should not have been tried on the subsequent indictment so long as the agreement between him and the state was subsisting, and he alone prevented from a specific performance of his part by the want of an opportunity so to do.

APPEAL from the Criminal Court of the city of Paris. Tried below before the Hon. JAMES Q. CHENOWITH.

The facts are sufficiently stated in the opinion.

*Hale & Scott* and *B. J. Baldwin, jr.*, for appellant.

*H. H. Boone*, Attorney General, for the State.

WHITE, J. This case presents, as its leading feature, rather an anomalous question.

It appears that, at the March term, 1872, of the district court of Lamar county, appellant and one Harry Arnold were jointly indicted for burglary.

R. Peterson, who was at that time the district attorney of that district, believing that Harry Arnold was the guilty party, and that a case could not be made out against him (Arnold) without the evidence of his co-defendant Bowden, after a consultation with the district judge then presiding, and with his entire concurrence, made an agreement with the defendant Bowden that he would enter a *nolle prosequi* in the case as to him if he, Bowden, "would well and truly attend as a witness for the state in the cause against Arnold, and fully and truly testify all he knew about the case."

This proposition was accepted by Bowden and the *nolle prosequi* entered, and Bowden then entered into a recog-

nizance to appear and testify against Arnold. In pursuance of this agreement the witness Peterson tells us that Bowden "has promptly attended court ever since, and is still under recognizance in that cause."

At the succeeding July term, 1872, the grand jury returned two indictments, both bearing the same number (1844), the first filed on the 25th, upon which defendant was tried in this case, and the second on the 30th of July, both against Bowden alone, for the same burglary, it being, as the evidence subsequently showed, the same identical offense with which Bowden had been jointly indicted with Arnold as aforesaid, and for which he had been discharged by the entry of the *nolle prosequi*, as above stated.

In the meantime Arnold, the co-defendant of Bowden, had been indicted, and on the 12th day of April, 1873, was tried, convicted, and sentenced to two years in the penitentiary for another crime—to wit, theft from the store-house of one P. M. Price—and the case against him in which the *nolle prosequi* was entered as to Bowden has not been tried.

At the December term, 1873, Bowden filed a plea to the jurisdiction of the court, setting forth, as the ground of his plea, the facts and circumstances of the *nolle prosequi*, and on the 6th of April, 1874, he further pleads the same facts and circumstances in bar of the prosecution.

On the 9th of February, 1875, M. L. Sims, the then district attorney, filed a general demurrer to the special pleas of defendant, which was sustained by the court, and defendant saved a bill of exceptions.

On the same day the defendant was tried upon his plea of not guilty, found guilty by the verdict of the jury, and his punishment assessed at two years in the penitentiary.

He made a motion for a new trial, which was overruled, and he appealed.

There was no exception taken to the sufficiency of the

indictment upon which defendant was tried, nor was there any motion in arrest of judgment; and we, therefore, do not feel called upon to pass upon its validity.

We purpose to notice only the 2d and 4th errors assigned, as we do not deem the others to have been well taken.

These two grounds of error present substantially the question as to whether or not, under the facts as above detailed, the court should have entertained jurisdiction of the case. In other words, whether, after the *nolle prose-qui* had been entered, and defendant had been discharged, in consideration of his turning state's evidence and testifying against his co-defendant, he could again be indicted and tried for the same offense when, through no fault of his, the case of his co-defendant, in which he was to give his evidence, had never been called for trial, or he afforded an opportunity to comply with his promise.

We have been unable to find a parallel case, but have found some authorities which we deem applicable. " The evidence of accomplices has at all times been admitted, either from a principle of public policy, or from judicial necessity, or from both. They are no doubt requisite as witnesses in particular cases; but it has been well observed that, in a regular system of administrative justice, they are liable to great objections. 'The law,' says one of the ablest and most useful of modern writers upon criminal jurisprudence, 'confesses its weakness by calling in the assistance of those by whom it has been broken. It offers a premium to treachery, and destroys the last virtue which clings to the degraded transgressor. On the other hand, it tends to prevent any extensive agreement among atrocious criminals, makes them perpetually suspicious of each other, and prevents the hopelessness of mercy from rendering them desperate.' " *The People* v. *Whipple*, 9 Cow. 707; 1 Chitty's Cr. Law, 82, 603, 769; Cowp. 334; 1 Leach, 118, 120.

The rule of practice in such cases is laid down by Mr.

Greenleaf. He says : " In regard to *defendants in criminal*
*cases,* if the state would call one of them as a witness against
others, in the same indictment, this can only be done by dis-
charging him from the record, as by the entry of a *nolle*
*prosequi,* or by an order for his dismissal and discharge,
when he has pleaded in abatement as to his own person and
the plea is not answered." 1 Greenl. on Ev., sec. 363.
Again, the same learned author says : " The admission of
accomplices as witnesses for the government is justified by
the necessity of the case, it being often impossible to bring
the principal offenders to justice without them. * * *
But whether an accomplice, already charged with crime by
indictment, shall be admitted as a witness for the govern-
ment, or not, is determined by the judges in their discre-
tion, as may best serve the purpose of justice. If he
appears to have been a principal offender he will be rejected.
And if an accomplice, having made a private confession upon
a promise of pardon made by the attorney general, should
afterwards refuse to testify, he may be convicted upon the
evidence of that confession." 1 Greenl. on Ev., sec. 379.

In the celebrated case of the *Commonwealth* v. *Knapp,*
Putman, J., says : " Persons who are properly admitted
here as state's witnesses are substantially in the same posi-
tion as persons in England who are properly admitted to
become witnesses for the crown against their accomplices.
The protection of the government is extended upon the
same terms, although the forms of proceeding are some-
what different. There, if the witness for the crown conducts
himself fairly, and makes and testifies to a full disclosure, he
is recommended to mercy, and a pardon is always granted.
Here, the attorney general, of his own authority and upon his
official responsibility, gives the pledge of the government
that the state's witness shall not be prosecuted if he makes
and testifies to a full disclosure of all matters in his knowl-
edge against his accomplices. In England, as well as in,

Massachusetts, those who are admitted as witnesses for the government may rest assured of their lives if they perform their engagements." 10 Pick. 478.

In the case of *The People* v. *Whipple*, already quoted above, Duer, C. J., says : " So long as by the policy of the law accomplices are deemed competent witnesses against their fellows, so long must a discretion in regard to admitting them be vested somewhere or other in the government. It could not consistently, in the nature of the power, or the course and character of judicial proceedings, be committed to the chief executive magistrate, nor could it with propriety be intrusted to the public prosecutor, or any other inferior ministerial officer of justice, because, strictly speaking, it is the exercise of a high judicial discretion, and the reason for vesting it in the court, rather than in the committing magistrate, or even the public prosecutor, is that the admission of the party as a witness amounts to a promise by the court of a recommendation to mercy upon condition of his making a full and fair disclosure of all the circumstances of the crime." 9 Cow. 711.

Lord Mansfield, in *King* v. *Rudd*, Cowp. 331, quotes the conclusions of Mr. Justice Gould in a case involving the effect of the accomplice turning state's evidence, in which he held "that the accomplice, having performed the conditions on which he was admitted as a witness, although he failed to produce the conviction of his associates, was nevertheless entitled to a recommendation for pardon," and he so ruled—as Lord Mansfield thought—" very rightly."

Judge McLean, in the United States circuit court, in the case of the *United States* v. *Lee*, says : " In the case of Lee, he was used as a witness with an understanding that he would not be prosecuted to conviction, provided he made a full disclosure in regard to the acts of Warner. The court have heard his evidence, and there seems to be no doubt that the disclosures made by the witness were true. He impli-

·cated himself, being the driver of the mail-stage ; but he was instigated to do the act by Warner, who was a much older and more experienced person.   The court think that Lee, as ·a witness, has acted in good faith, and that the acquittal of Warner by the jury in no respect affects the right of the witness to claim an exemption.   The government is bound in honor, under the circumstances, to carry out the under·standing or arrangement by which the witness testified, and ·admitted, in so doing, his own turpitude.   Public policy and the great ends of justice require this of the court."    *United* ·*States* v. *Lee*, 4 McLean, 103.

Again, we copy from the opinion of Judge Duer in *The People* v. *Whipple.*   He says :   " It may, however, be· objected that in a case like the present there can be no certain assurances of a pardon, inasmuch as the power of granting ·pardons is vested by the constitution solely in the governor, .and that, the authority of the court extending no further than the recommendation, it must after all rest with the ·executive whether that recommendation be complied with or not.   This is indeed true ; but it by no means follows that, where an implied pledge results from the conduct or pro·ceedings of a coördinate department of the government, or is given even by its subordinate agents, acting in good faith within the scope of their authority, it will not be sanctioned by the executive.   On the contrary, the legal presumption is that the public faith will be preserved inviolate, the law respected, and an equitable claim, founded upon both, ratified and allowed.   Could a different supposition be for a moment tolerated, this court would be bound most scrupulously to discharge its own obligations as far as they extend and as far as we have the power.   And if an accomplice perform the condition on which he is admitted as a witness for the people, according to its spirit, we hold ourselves bound in duty and in conscience to redeem the promises which the law raises in his favor, to the very letter."   9 Cow. 716, 717.

Under our statute it is provided " that the district attor-

ney may, at any time, dismiss a prosecution as to one or more defendants jointly indicted with others, and the person so discharged may be introduced by either party." Pasc. Dig., Art. 3053. And it seems to have become a practice, recognized as correct, in our own courts for the district attorney, with the concurrence of the court, to enter a *nolle prosequi* in cases where it was deemed essential to the ends of justice that one or more of the defendants, by his consent or at his instance, should turn state's evidence against his co-defendants. *Garrett* v. *The State*, 41 Texas, 530; *Barrara* v. *The State*, 42 Texas, 260; *Williams and Smith* v. *The State*, 42 Texas, 392; *Wright* v. *The State*, 43 Texas, 170; *McWilliams* v. *The State*, Tyler, Nov. 26, 1875.

In the case of *Johnson* v. *The State*, Walker, J., says: " There was no error in allowing the trial to pause until the case of *The State* v. *Jules Mitchell* could be called, for the purpose of allowing a *nolle prosequi* to be entered, preparatory to offering him as a witness. It was probably a step necessary to be taken to serve the ends of justice in this case. Nothing was done in the case to interrupt the trial. The state wanted to use Mitchell as a witness, and wished first to relieve him from an indictment which was pending against him for the same offense for which Johnson was tried, and there was no error in what was done." *Johnson* v. *The State*, 33 Texas, 570.

We have been thus particular in quoting from the authorities above cited, for the reason that they are the only ones which we have been able to find having any bearing upon the question presented in this case. The difference between those cases and the one at bar, it will be perceived, consists in the fact that the witness in those cases, upon the entry of the *nolle prosequi*, was put upon the stand, or proposed to be put upon the stand, to testify in the trial then progressing or about to commence. And it is undoubtedly the better rule that the *nolle prosequi* should not be entered.

until after an announcement of ready for trial by both parties.

The state, it seems, felt the necessity in this case of having the testimony of Bowden in the trial against Arnold.

The proper officers representing the state—the district attorney and the district judge—consenting, contracted with defendant that a *nolle prosequi* should be entered "if he would well and truly attend as a witness for the state against Arnold, and fully and truly testify all he knew about the case." The agreement was performed on the part of the state by the entry of the *nolle prosequi*, and was performed by the defendant, so far as he was able to perform it, by the recognizance entered into on his part to testify when the Arnold case was tried.

There is no doubt of the correctness of the rule "that the effect of the *nolle prosequi* is to put the defendant without day upon that indictment," and that ordinarily "he becomes, while he is so, amenable to another indictment in any court having jurisdiction of the offense." 1 Colby's Cr. Law, 271; 1 Bishop's Cr. Law, secs. 856, 862.

There might have been no impropriety, while it was evident that the Arnold case could not be tried, to procure the finding of another indictment against Bowden; though of this we do not feel perfectly satisfied. Still, we do not hesitate to say that, in our opinion, the defendant should not have been tried on the subsequent indictment so long as the solemn contract between him and the state was subsisting, and he was alone prevented from a specific performance of his part by the want of an opportunity to do so. There has been no default on his part, and, until there is, the plighted faith of the state should have been kept inviolate in his immunity from further prosecution and punishment.

The judgment of the lower court is reversed and the cause is remanded.

*Reversed and remanded.*