### Willis H. Poe v. The State.

### Pad Robinson v. The State.

1—See this case for a charge given by the court below in a trial for murder in the first degree, and which is highly commended by this court as a model worthy of imitation in similar cases.

2—This court also takes occasion to approve the refusal of the court below to instruct the jury as to the second degree of murder, there being no evidence tending to reduce the homicide to that degree, and the real question in the case being as to who was the criminal agent.

3—When the admission of illegal evidence is relied on, it is the duty of attorneys to except at the trial below and set forth the specific errors in their bills of exception, so that the attention of this court may be directed to the errors which are complained of.

Appeal from Rusk.   Tried below before the Hon. J. B. Williamson.

At the Spring term (1868) of the District Court of Rusk county, the appellant and one Harris Robinson, otherwise called Pad Robinson, were separately indicted and tried for

the murder of William R. D. Ward.   Both of the accused were convicted of murder in the first degree.

The case was one of unusual atrocity.   The deceased and his friend and companion, Col. Ely, arrived at the town of Henderson, in Rusk county, on the evening of April 1st, 1868, on an excursion through the country for the purpose of buying cotton.   They stayed over night at the hotel in the town, and hired a hack and horses of the proprietor for four days, proposing to proceed towards Mount Enterprise in pursuance of their business.   On arriving at Henderson, they made a deposit in the safe of a business man of the place, of a shot-bag and satchel containing a considerable amount of coin, which they received again in the morning before leaving.   Their business, their possession of a large amount of money, and the route they proposed to take, became known before their departure.   They left Henderson about nine o'clock on the morning of the 2d of April, with the hack and horses, but took no driver with them. They stopped the same day and got dinner at Mr. Josephus Clark's, some nine miles from Mount Enterprise, and about two o'clock in the afternoon proceeded on their journey.   A short distance from Mr. Clark's, Mr. Ely was found, sitting against a tree, badly wounded, by two shots in the back, of which he subsequently died.   He had managed to walk nearly half a mile from where the crime was perpetrated.   He sent the persons who found him to search for Ward.   They found Ward lying dead on the ground, nearly a mile from where Ely was found, the horses having run away with the hack, and Ward in it, when the shots were fired.   Ward was also shot in the back, with but one bullet, apparently from a navy six-shooter.

The shot-bag and satchel were found broken open and rifled of their contents.

There was a large amount of circumstantial evidence introduced at the trials in the District Court, tending very strongly to the identification of the accused as the assassins.   In view of the opinion of this court it is not deemed necessary to detail it.   Indeed, if this evidence had left doubts as to the guilty

parties, the voluntary vaunts of Poe, made before his arrest, and the deliberate confession of Robinson, made while under arrest, placed their guilt beyond all doubt.

On the trials below, counsel for the defendants tendered instructions with reference to murder in the second degree, but which the court refused to give to the jury.

The charge to the jury, commended by this court in the opinion, was the charge given in the case against Poe, which was as follows:

"In this case you should carefully consider all the evidence before you, and if you are satisfied therefrom that the defendant, Willis H. Poe, any time within one year before the finding of the indictment in this case, willfully, deliberately, and with premeditated purpose and formed design to kill, did shoot and kill William R. D. Ward, as charged in the indictment, you will find the defendant guilty; otherwise, you will not.

"The evidence before you is circumstantial, but if it points to the guilt of the defendant with such certainty as to exclude from your minds any other conclusion, and if you find as charged above, you must convict; otherwise, you must find the defendant not guilty.

"You will find your verdict in this form: 'We the jury find the defendant, ———, as charged in the indictment.' If you find the defendant guilty as charged above, you will find him guilty of murder in the first degree, there being no evidence to reduce the offense below that degree."

Exceptions were taken on the trials below to the charges given by the court, and to its refusal to give instructions with reference to the second degree of murder.

New trials being refused, an appeal was taken in each case.

The opinion of this court, which here follows, is that delivered in Poe's case. A short opinion was also delivered in Robinson's, but it merely refers to the one now printed for the grounds on which the judgments below are affirmed on both appeals.

No brief for the appellants.

*W. H. Andrews*, Acting Attorney General, for the State.

LINDSAY, J.—The appellant was indicted by the Grand Jury of Rusk county, at the spring term of 1868, for the murder of William R. D. Ward, on the 2d day of April, 1868, in the county of Rusk. The accused was put upon his trial before the court and the petit jury at the same term, and the jury, after hearing the evidence, returned into court a verdict that the accused was "*guilty of murder in the first degree,* as charged in the indictment." Upon this verdict the judgment of the court was pronounced, and from that judgment the prisoner has appealed.

We have scrutinized the record of the proceedings in this case with the gravity and attention becoming an occasion involving the earthly destiny of a fellow mortal. This was due to the majesty of the law, as well as to the interest of the party implicated in its requirements, and by its authoritative demands. While the demands of the law must be satisfied, it is not less important that the citizen should be fully protected against all injustice and oppression by its maladministration. Impressed with this conviction, without an attorney in this court to represent the prisoner, we trust we have duly and carefully considered, in the light of the law and of the interests of society, the just claims and rights of the prisoner, as they appear to us by the record of the proceedings upon his trial before a jury of his countrymen and his county men.

From that record, it seems, he was fairly and impartially tried. And upon that trial, a jury of his own selection, according to the provisions of the law, believed from the evidence adduced before them, that he was guilty of murder as charged. Still, if errors were committed in the progress of that trial, either in the introduction of proof, or in the exposition of the law as applicable to the facts proved upon the trial; which might have even possibly conduced to secure his conviction;

in expounding and interpreting the law in its humanity, which is our bounden duty, we should feel neither hesitancy nor reluctance in arresting the proceedings by reversing the case, and giving the prisoner an opportunity of being again heard in his defense.

It being our duty in criminal, as in other cases, simply to revise the proceedings of the District Court, to ascertain whether the law was properly expounded, and whether any improper evidence was allowed to be introduced upon the trial, it is not our province to pronounce upon the guilt or innocence of the prisoner.

Upon the trial, the counsel for the prisoner interposed many objections to the different steps in its progress before the cause reached the jury, and was submitted for their consultation and deliberation, to which it is needless for us to give any special consideration. The most that can be said of them is, that they were slight irregularities, which did not, and could not, affect, or prevent, a fair and impartial trial by the jury of the vicinage. The only matters which require our special attention are the two assignments of error, to wit: the charge to the jury, and the admission of improper testimony. If either of these assignments be correct, the prisoner would be justly entitled to a new trial, and a rehearing of his cause.

The indictment was in the usual form, for murder. The evidence was arrayed before the jury. Without rehearsing it in detail, the proof showed that the homicide was committed upon the public highway, by some guilty agent, at a somewhat sequestered spot upon that highway; that the acquisition of the money of the victim was the motive and object of that guilty agent, because the money was taken and carried off. The circumstances adduced satisfied the minds of the jury that the accused was that guilty agent. What law could be applicable to such a state of facts, but that law which denounces its penalty against murder of the first degree? The charge of the court was accordingly so made, that if they found the accused, from the evidence before them, the guilty agent, their verdict

must be for murder in the first degree. No other charge of the law of the case could have been given with any propriety. Hence, all the charges asked by the counsel for the accused were properly refused and rejected. In the brevity and comprehensiveness of the charge actually given, a model and example is presented which might be profitably and advantageously imitated in the general administration of the criminal law. It is the duty of the judge presiding at such trials to be vigilant and watchful, and fully to hear and understand the evidence given, as well as the jury. It is his province to apply hypothetically the law, and such law only, as the facts proven upon the trial will warrant. None other. Parading law before the jury, inappropriate to the actual facts proved upon the trial, serves only to darken counsel, to bewilder their minds, and to mar and obstruct the administration of criminal justice. The charge of the court in this case, therefore, instead of being objectionable, is highly commendable; and it were to be wished that the practice was more universally observed in the interest of administrative justice.

In the examination of the evidence agreed by the attorneys, and certified by the court, we are unable to detect any testimony which is illegal, and not pertinent to the investigation at the trial. If there really was illegitimate testimony admitted, it is not apparent from the record. It was the business of attorneys to except to rulings of the court admitting it, at the time of such rulings, if they occurred, and to have set forth the special and specific errors by a bill of exceptions, which would have fixed the attention of this court, and enabled it to review and correct them, if erroneous. But no such exceptions are found in the record, and the agreed evidence is certainly indicative of no such errors.

In reviewing, then, the whole record, we can discover nothing which conduced, in the slightest degree, to work injustice to the prisoner, or to militate against a fair and impartial trial of the offense for which he stood arraigned. From all that appears in this record, justice was done to the prisoner,

while the majesty of the law was only vindicated in the results of the trial.

The new trial is therefore refused, and the judgment of the District Court affirmed.

Affirmed.