## Edmond Cooper *v.* The State.

1. Practice.—Rule 56 for the District Courts allows exceptions to evidence to be embodied in the statement of facts, and this rule is applicable to criminal as well as civil cases. But when this practice is adopted, in lieu of a bill of exceptions, the statement of facts should expressly show and note the exceptions; no intendments will be indulged. *Higginbotham* v. *The State*, 3 Texas Ct. App. 447, *contra*, explained.

2. Same.—Incompetency of a witness by reason of his previous conviction of felony cannot be proved by the witness himself, if objection be duly interposed. The record is the best evidence, and it must show the judgment of conviction.

3. SAME. — PARDON of a witness, relied on to restore his competency, should be proved by the charter of pardon. Art. 3110, Paschal's Digest, did not change this rule. (The second head-note in *Schell* v. *The State*, 2 Texas Ct. App. 30, was, it seems, a misconstruction by the reporters of the ruling in that case.) Rev. Code Cr. Proc., art. 730.

4. CONTINUANCE. — DILIGENCE is not shown by mere allegations that process for the absent witness was opportunely obtained and promptly placed in the hands of the sheriff. The application must also show whether the process has been returned, and, if so, when and by whom. Presumptions will not be indulged to supply these necessary allegations.

5. EVIDENCE. — Such collateral facts as are incapable of generating any reasonable presumption or inference respecting the guilt or innocence of the accused are not competent evidence, — as, for instance, the fact that an adverse witness had himself been prosecuted for crime. Nor, in general, is evidence admissible of the character of the person on whom the offence was committed, unless his character be part of the *res gestœ*.

6. EVIDENCE OF WITNESS OUT OF THE STATE. — The fact that a material witness is a resident of the State who, a few days before the trial, went and still is beyond the limits of the State constitutes no predicate for the introduction of the testimony given by him at a previous judicial investigation of the case.

7. CREDIBILITY OF WITNESSES. — There is no rule which requires a jury to believe an unimpeached witness, or to reject the testimony of a witness against whom impeaching evidence has been adduced. Though a jury should not reject testimony arbitrarily, its credibility is for their determination, in view of all the evidence, the manner of the witness, etc.

APPEAL from the District Court of Panola. Tried below before the Hon. A. J. BOOTY.

The indictment charged the appellant with an assault with intent to murder Luther Crenshaw, on September 19, 1878. The jury found the appellant guilty, and assessed his punishment at two years in the penitentiary.

Crenshaw was the principal witness for the State, and the only witness to the commission of the offence. He lived about three miles from the village of De Berry in Panola County, and the defendant lived near the same road, and between witness and the village. On the day alleged in the indictment, the witness and the defendant were both in the village of De Berry. Witness, being afraid of being attacked by the defendant as he should pass the latter's house in

returning to his home, remained in De Berry until after eleven o'clock at night, and then started home on foot. When he arrived within about two hundred and fifty yards of the defendant's house, some person rose up from behind a log by the side of the road, and some twenty feet from witness, and said, "Hello! who is that?" Witness answered, "It's Bill," giving a false name to mislead the party, and turned and faced him, when the person instantly fired upon witness. Witness ran, and was fired upon again by the same person. He was struck in the neck by one squirrel-shot, which penetrated the skin, and on his left shoulder by sixteen other small shot, which went through his coat. The night in question was a starlight night, and the man who shot witness was the defendant; witness recognized him by his voice.

N. L. Davis, for the State, testified that he also was in De Berry, and there saw the defendant and Crenshaw, on the day alleged in the indictment. Defendant was drinking; and as he was leaving town, witness heard him say, "The son of a bitch might have to pass my house, and I'll see him when he passes," — or words to that effect. On cross-examination, the witness gave the defendant a good reputation as a quiet and peaceable man.

Another State's witness saw the defendant as he started home about sunset on the day in question. Defendant was muttering to himself as though he was mad, and appeared to have been drinking; which attracted the attention of witness, because it was the first time he had ever seen the defendant in that condition.

The defence introduced the wife of the appellant, and she stated that he was drunk when he got home on the evening spoken of, and that he fell down before the fire and slept there all night. She was up all night with a sick child, and knew that he did not leave the room that night. The next morning he went to bed with his clothes on, was sick, and sent for a doctor. She also stated that his only gun was

not at home during the day and night when Crenshaw was shot, because her son, who lived a quarter of a mile from them, had borrowed it the day previous and had not returned it. The morning after appellant came home drunk, his horse was found in the field with the saddle still on him. In these statements about the gun and the horse she was corroborated by her son.

The defence also proposed to read the evidence of Louisa Sulton, given at an examining trial of the appellant upon this same charge, — it being shown that a week or ten days before this trial she had gone to Louisiana to visit her relatives, and had not returned. This was excluded on objection by the State, and the defence excepted.

The opinion states such other matters as are pertinent to the rulings.

*Hazlewood & Hull*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J.    On the trial in this case, as shown by the statement of facts, when the assaulted party, "Luther Crenshaw, was offered as a witness by the State, defendant's counsel examined him upon his *voir dire*, and proved by said witness that he had been convicted of a felony in the District Court of Harrison County, Texas, and served a term of eighteen months in the penitentiary. The county attorney then asked the witness 'if he had not been pardoned by the governor.' Defendant objected to the witness's testifying only as to his having been pardoned, insisting that the pardon itself should be produced. The objection was overruled, and the witness was allowed to testify."

To have entitled defendant to use this recital in the statement of facts, in lieu of a bill of exceptions expressly reserved to the action of the court admitting the testimony

objected to, the statement of facts should have shown further, and it should have been noted therein in terms, that defendant " *excepted* " to the ruling.   " Exceptions to evidence admitted over objections made to it on the trial may be embraced in the statements of facts, in connection with the evidence objected to."   Rules for the District Court, 56 ; 2 Texas Ct. App. 666 ; 47 Texas, 627.

We see no reason why this rule is not applicable to criminal as well as civil cases, and it will be thus recognized in cases where it has been properly availed of.   But unless the exception to the ruling is made to appear affirmatively, no intendment will be indulged in its favor, since the rule is an innovation upon the settled practice in this State, which is that the rulings of the court below in admitting or excluding evidence will not be revised on appeal unless proper bills of exception were duly taken and brought up in the record.   *Johnson* v. *The State*, 27 Texas, 758 ; *Brown* v. *The State*, 2 Texas Ct. App. 115 ; *Owens* v. *The State*, 4 Texas Ct. App. 153 ; *Poe* v. *The State*, 32 Texas, 65. (The case of *Higginbotham* v. *The State*, 3 Texas Ct. App. 447, where it was held that an exception to the ruling of the court mentioned in the statement of facts was not equivalent to a bill of exceptions, was a case which was tried before the rule quoted above was adopted.)

There is no doubt but that the objection was a good one if it had been properly saved by exception.   One of the classes of persons declared by statute to be incompetent to testify is " all persons who have been or may be convicted of felony in this or any other State of the United States, or any other state or kingdom, unless such person or persons may have been pardoned for such crime," etc.   Pasc. Dig., art. 3109 ; Rev. Stats., Code Cr. Proc., art. 730.   Had the county attorney objected in the first instance to the mode of attempting to prove that the witness was incompetent by reason of his conviction of a felony, the court would doubtless have sustained the objection, because " the cou-

viction of a witness for an infamous crime cannot be proved by the witness on his *voir dire*, he not being bound to answer; nor would his answer be the best evidence of which the case was susceptible." *The People* v. *Herrick*, 13 Johns. 82. Nor is parol testimony of the conviction admissible in any case, but the party objecting must have a copy of the record of conviction ready to produce in court. *Hilts* v. *Colvin*, 14 Johns. 182. And it is not only necessary to show the conviction, but also the judgment, in order to disqualify the witness. *The People* v. *Whipple*, 9 Cow. 707; *Castellano* v. *Peillon*, 2 Mart. La. (N. S.) 466; *Cushman* v. *Loker*, 2 Mass. 208; *Skinner* v. *Perot*, 1 Ashm. 57; Cow. & Hill's Notes, 1 Ph. on Ev. (4th ed.) 23, note 14.

"It is *the judgment*, and that only, which is received as the legal and conclusive evidence of the party's guilt, for the purpose of rendering him incompetent to testify. *  *  * And the judgment itself, when offered against his admissibility, can be proved only by the record, or, in proper cases, by an authenticated copy, which the objector must offer and produce at the time when the witness is about to be sworn, or at farthest in the course of the trial." 1 Greenl. on Ev., sect. 375; *Schell* v. *The State*, 2 Texas Ct. App. 30. Authority to grant pardons in Texas is conferred upon the governor by the eleventh sect. of art. 4 of our Constitution. When granted, "a pardon may (and should) be proved by production of the charter of pardon under the great seal of the State." *Schell* v. *The State*, 2 Texas Ct. App. 30; *Roberts* v. *The State*, 2 Overt. 423; *The State* v. *Blaisdell*, 33 N. H. 388; 1 Greenl. on Ev., sect. 317. In case of loss of original, the proof may be made by certified copy under the great seal of the State. This rule is not changed by Paschal's Digest, art. 3110. But, as stated above, coming in the shape presented in the statement of facts, the objection cannot be considered in the light of an exception.

No error was committed in overruling the application for continuance; because whilst it is shown that the subpœna

for the witness was taken out in time and placed in the hands of the sheriff, it is not shown what became of it, nor whether it was served or not served, nor that it was returned even. "The application should show to whom and when the subpœnas were delivered, and when and by whom they were returned, if returned." *Cantu* v. *The State*, 1 Texas Ct. App. 402; *Murray* v. *The State*, 1 Texas Ct. App. 417; *Buie* v. *The State*, 1 Texas Ct. App. 452; *Grant* v. *The State*, 2 Texas Ct. App. 163; *Johnson* v. *The State*, 4 Texas Ct. App. 268; *Henderson* v. *The State*, 5 Texas Ct. App. 134; *Fields* v. *The State*, 5 Texas Ct. App. 616.

In the case under consideration, the subpœna was issued and placed in the hands of the sheriff on the 20th; the trial took place on the 27th. The witness being a resident of the county, the subpœna, for aught that appears, may have been returned, after issuance, on the same or the next day, "not executed." If this had been the case, five or six days elapsing from such return to the day of trial, without taking steps to obtain other process, would clearly have shown want of proper diligence. What were the exact facts we are not apprised, because the return or failure to return the process is not shown; and the illustration is given to manifest the necessity that the return should be averred, or we are not in situation to say that diligence has been used; and presumptions cannot be indulged where it was within the power and became the duty of the party to avoid them by stating facts within his knowledge, or easily accessible.

A bill of exceptions was also reserved to the refusal of the court to permit the defendant to prove by the prosecuting witness, Crenshaw, that he (Crenshaw) had a great many enemies in the neighborhood where the assault upon the witness was committed; that the witness had been arrested for carrying a pistol into a church, and for unlawfully cutting timber on the land of another, and for carrying a gun into a court of a justice of the peace, and for seriously threatening to

take the life of a human being, and for assault with intent to murder, — the purpose being to show that the assault on witness might have been by some other party than defendant.

This evidence was held by the court to be irrelevant, immaterial, and inadmissible. The ruling was correct; such evidence of collateral facts was incapable of affording any reasonable presumption or inference as to the principal issue or matter in dispute, to wit, the guilt or innocence of defendant. 1 Greenl. on Ev., sects. 51, 52. Such character of evidence has been discussed and considered time and again by this court, and held inadmissible. See *Bowen* v. *The State*, 3 Texas Ct. App. 617; *Boothe* v. *The State*, 4 Texas Ct. App. 202; *Walker* v. *The State*, 6 Texas Ct. App. 576; *Sharp* v. *The State*, 6 Texas Ct. App. 650. For additional authority upon the point, not cited in the above cases, see 56 Ga. 363; 57 Ga. 102; 30 La. An. 921. Nor, in general, is evidence admissible in regard to the character of the party on whom the offence was committed, — his character, save in exceptional cases, being no part of the *res gestæ.* 3 Greenl. on Ev., sect. 27; *Stevens* v. *The State*, 1 Texas Ct. App. 591.

Another bill of exceptions was saved to the refusal of the court to admit in evidence the written testimony, taken on the examining trial, of a witness who was temporarily absent from the State. There was no error in this; for the circumstances with regard to the evidence do not bring it within the exceptions rendering such evidence admissible, as they are declared in *Sullivan* v. *The State*, 6 Texas Ct. App. 319.

Though it has not been objected to, nor any additional instructions asked, we have examined with care the charge of the court, and find it in the main a very clear and able exposition of the law growing out of the facts. And though we cannot commend entirely that portion of it which instructs the jury in regard to their duty in weighing and

determining the evidence, we are unable to say that it is in conflict with established authority. *Rideus* v. *The State*, 41 Texas, 199; *Leverett* v. *The State*, 3 Texas Ct. App. 213; *Walker* v. *The State*, 6 Texas Ct. App. 576; *Butler* v. *The State*, 3 Texas Ct. App. 48. The correct doctrine is, that " there is no positive rule that the jury must believe a witness who has not been impeached; nor must they reject his testimony if evidence has been offered to impeach him. The question of credibility, under all the testimony and indications from the manner of the witnesses, is for the jury, though they are not to reject a witness arbitrarily." *City Bank of Macon* v. *Kent*, 57 Ga. 253; *Evans* v. *George*, 80 Ill. 51; *Smith* v. *Grimes*, 43 Iowa, 357; *Green* v. *Cochran*, 43 Iowa, 545; *The State* v. *Smallwood*, 75 N. C. 104; *Chester* v. *The State*, 1 Texas Ct. App. 702.

The judgment is affirmed.

*Affirmed.*