## Case No. 13,997.
### THORNTON v. CHAPMAN.
[2 Cranch, C. C. 244.] 1
Circuit Court, District of Columbia. May Term, 1821.

ARBITRATION—NOTICE TO PARTIES—UMPIRE.

An umpire must give notice to the parties, and to the arbitrators of the time and place of his proceeding to act upon the subject submitted.

Debt [by Nicholas Thornton against Charles T. Chapman] upon the award of an umpire.

Mr. Taylor, for the defendant, objected at

1 [Reported by Hon. William Cranch, Chief Judge.]

the trial, that the umpire had given no notice to the defendant or to the arbitrators of the time and place of his proceeding to act upon the matter submitted.

THE COURT (THRUSTON, Circuit Judge, absent,) was of opinion, and instructed the jury, that the award would not support the plaintiff's action if they should be of opinion from the evidence that the defendant had no notice, &c. Non pros.

## Case No. 13,998.
### THORNTON v. DAVIS.
[4 Cranch, C. C. 500.] 1
Circuit Court, District of Columbia. March Term, 1835.

INJUNCTION — VIOLATION — CONTEMPT — EVIDENCE TO CONTRADICT AFFIDAVIT—MISNOMER— PETITION FOR FREEDOM.

1. If a petition for freedom be filed, and a bill for an injunction to restrain the master from removing the petitioner out of the jurisdiction of the court, the injunction may be granted on the affidavit of the petitioner; and if the injunction be not obeyed, an attachment may issue upon a proper affidavit; and, if the party be taken upon the attachment, and brought into court, he will not be discharged until he has given security, as required by the rules and practice of the court that the petitioner shall be permitted to attend the trial, &c.
[Cited in U. S. v. Anon., 21 Fed. 767, 768.]

2. The court, upon an attachment of contempt, by disobeying an injunction, will not hear witnesses to contradict the affidavit, nor grant a rule to show cause.

3. The court will not quash an attachment on account of a misnomer in the injunction, nor receive a plea in abatement.

Petition [by negro John Thornton] for freedom.

Upon filing the petition, and a bill for an injunction, the chief justice had, in vacation, granted an injunction to restrain the defendant from removing the petitioner from the jurisdiction of the court until further order.

W. L. Brent now moved for an attachment against Orrine Davis, for disobeying the injunction, and removing the petitioner, upon an affidavit stating the service and contemptuous language used by the defendant, on the service of the injunction, and his determination to remove the petitioner, if he could find him, and an offer of $75 if any one would find him; and also stating the belief of the affiant that he has been removed; and that the defendant admitted that he had removed him; and that the defendant was not a resident of the District of Columbia, and was about to leave it.

Mr. Coxe and Mr. Dandridge objected, and contended that the practice was to issue, first, a rule to show cause, and offered to examine witnesses to contradict the affidavit.

1 [Reported by Hon. William Cranch, Chief Judge.]

But THE COURT (THRUSTON, Circuit Judge, absent,) refused to hear them; and, as the defendant was a non-resident, and about to leave the District, refused to grant a rule to show cause, but issued an attachment returnable immediately, it being a case of disobedience or the process of this court, as a court of chancery, in which case it is not usual to issue a previous rule to show cause.

Mr. H. B. Robinson, and Mr. Madison Jeffers, two of the constables of this county, having been, in argument, charged by Mr. Brent with assisting the defendant in disobeying the injunction, were permitted to speak in their own justification, and, among other things, stated facts implicating the purity of the professional character of Mr. Giberson, one of the counsel of the petitioner in this cause, intimating that he had consented to take $25 for discovering where the petitioner was, so that he might be seized by the constables who were trying to catch him to deliver him up to his master, so that he might carry him away out of the jurisdiction of this court, in violation of the injunction.

Whereupon Mr. Key, attorney for the United States, said that, at the suggestion of several members of the bar, he thought it due to them and to the court, to request the court to take judicial notice of the matter; and, with this view, stated the charge in writing, and moved for a rule on Mr. Giberson to show cause on Thursday next, why he should not be dismissed from the bar, or be otherwise dealt with as to the court should seem proper.

The attachment against Orrine Davis was returned, and the defendant appeared.

Mr. Coxe, for defendant, moved to quash the attachment, on the ground of misnomer, and the injunction, because granted on the affidavit of the petitioner. The name in the injunction is Irrine Davis, not Orrine Davis, which is the name in the attachment, and is his true name.

Mr. Coxe, as to the misnomer, cited Wilks v. Lorck, 2 Taunt. 399; Rex v. Shakespeare, 10 East, 83; Petersd. 654, "Misnomer"; 1 Chit. Pl. 280.

Mr. W. L. Brent, contra. It is the usual course to grant an injunction upon the affidavit of the petitioner for freedom.

Mr. Coxe said, in reply, that the authority of the court to issue an injunction in such a case, upon such an affidavit, is seriously doubted; and that doubt has been suggested from the bench. A colored man is, prima facie, a slave, who cannot testify in any case.

THE COURT (THRUSTON, Circuit Judge, absent,) gave no opinion as to the effect of the misnomer, nor upon the validity of an injunction granted upon the affidavit of the petitioner, a colored man; but said, that as the defendant had not denied that he removed the negro after the service of the injunction, there was a technical contempt, although he might have had no intention to treat the process of the court with contempt. And as he is now present in court, and has not obeyed the subpœna to answer the petition for freedom filed by the negro, by appearing and entering into the usual recognizance to produce the petitioner here at the trial, &c.; the court would not discharge him from the attachment until he should have given the usual security by way of recognizance.

Mr. Dandridge, for the defendant, offered a plea of misnomer in abatement.

THE COURT, however, (THRUSTON, Circuit Judge, absent,) rejected it, for the following reasons: The proceeding by petition for freedom is a summary proceeding; it has little or no analogy to an action at common law, and is not subject to the technical rules of pleading. It is a petition by a person prima facie incompetent to maintain an action at law. It is framed in the simplest terms; complaining that the petitioner is a freeman, but is held in slavery by the person named, and praying that he may be summoned to answer the petition. The trial of the fact as well as the law is to be by the court, unless either party should apply to the court for the benefit of a trial by jury; in which case the court is to charge the attending jury to determine each and all of the allegations, contained in the petition, which may be controverted; and either party may challenge twelve of the jurors peremptorily, and may take bills of exception and appeal as to matter of law. Here is no original writ necessary to give jurisdiction to the court, (as in England,) and which is the subject of abatement; nor is there any technical declaration which can vary from the original writ, and be the cause of its abatement, or the subject of special pleading. There can be no personal judgment against the respondent, the judgment of the court only establishes a fact; namely, the freedom or the slavery of the petitioner. If the right person be summoned, which is admitted in the plea, it is immaterial by what name he is called in the summons. The issue upon a petition for freedom is upon the mere right, and is as simple as it is in a writ of right; and the court will not suffer the merits of the case to be smothered in the technicalities of special pleading in the one case, any more than in the other.

The respondent can only give a general denial to the allegations of the petition, or disclaim all title to the petitioner, or deny the jurisdiction of the court. But if the respondent had a right to put in a plea of misnomer in abatement, the plea now offered would be bad on demurrer, for the following reasons:

1. Because there is no original writ to be abated; and when, in a plea in abatement, the defendant prays judgment of the writ, no other writ is intended than the original writ issuing out of chancery in the name of the king, (teste meipso,) which is the only

foundation of the authority of the court to take cognizance of the cause.

2. Because it commences with praying judgment of the writ, and concludes to the jurisdiction of the court; when the matter of the plea, if true, does not oust the court of its jurisdiction, but is only an excuse for the defendant's not answering to that writ.

3. Because it does not conclude with any prayer for judgment.

In dilatory pleas the greatest accuracy is required in framing them; and they should be certain to every intent. 1 Chit. 444, 445.

THE COURT, therefore, refuses to receive the plea.

1. Because the proceedings in the cause are summary.

2. Because no personal judgment can be rendered against the respondent.

3. Because the plea, if received, would be bad upon demurrer.