UNITED STATES *v.* WYNN.*

*(District Court, E. D. Missouri.* January 30, 1882.)

1. CONSTITUTIONAL LAW—INFAMOUS CRIMES—ARTICLE 5 OF THE AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES CONSTRUED.

   No crime is infamous, within the meaning of article 5 of the amendments to the federal constitution, unless expressly made infamous or declared a felony by an act of congress.

2. SAME—SAME—STEALING FROM THE MAIL—PRACTICE—INFORMATION.

   Stealing from the mail is not an infamous crime and may be prosecuted by information.

Motion in Arrest of Judgment.

*Drummond & Smith,* for the United States.

*Paul Bakewell* and *G. M. Stewart,* for defendant.

TREAT, D. J. An information was filed against the defendant, under the second clause of section 5469, Rev. St., which section is as follows:

"Any person who shall steal the mail, or shall steal or take from or out of any mail or post-office, etc., any letter or packet; any person who shall take

*Reported by B. F. Rex, Esq., of the St. Louis bar.

the mail, or any letter or packet therefrom, or from any post-office, etc., with or without the consent of the person having custody thereof, and open, embezzle, or destroy any such mail, letter, or package which shall contain any note, bond, etc.; * * * any person who shall by fraud or deception obtain from any person having custody thereof any such mail, letter, etc., although *not* employed in the postal service, shall be punishable by imprisonment at hard labor for not less than one year and not more than five years."

Under said information the defendant was tried before a jury and found guilty.

The court assigned as counsel for the defendant, Messrs. Bakewell and Stewart, who have assiduously attended to the case, and presented to the court, in the light of authorities and argument, their views of the law which should govern United States courts in this class of vexed and undetermined cases. With equal diligence the counsel for the United States have prosecuted the controversy.

The first question is, what, under the fifth amendment of the United States constitution, is an infamous crime? and the second, whether the offence charged is within that provision. Within a few years past there has been much discussion of the main question, and several decisions by the United States courts, each of which encounters and endeavors to solve, at least to a limited extent, the many and important difficulties involved. They are too numerous for detailed analysis or review. Many of them fully consider what at common law were infamous crimes, and proceed on the theory that if a like offence exists under United States statutes, it must be considered "infamous" under the federal statutes. Hence, the elaborate review in such cases of the common law, and British statutes existing at the date of the United States constitution, and original amendments thereto. Counsel in this case have in the most praiseworthy manner presented the whole line of English decisions and authority on this subject, which, if conclusive or persuasive, would have an essential bearing on the question.

At the date of the United States constitution there were no federal offences except, impliedly, treason. The fifth amendment refers to "capital offences and other infamous crimes." Were those offences which at that time were capital or infamous at common law to be considered as within the purview of that amendment, if thereafter congress chose to specify offences against the United States, and did not denounce capital or infamous punishment on conviction thereof? Of the many offences at common law, and by British statutes, which were capital, very few were even made federal offences or punishable

capitally. Hence, in this particular, it must be conceded that there was not embraced in the purview of the constitution any offences denominated "capital" except those which might thereafter be so declared by congressional enactment. If this be so, why should a different rule obtain as to the so-called "infamous crimes" designated in the same amendment? The rule governing the two should be the same.

If regard is had to the then existing common law and British statutes, as fully explained in the cases cited, it may be considered as settled that the treason, felony, and *crimen falsi* were infamous. To every student of legal history it is well known that many offences now considered trivial, comparatively, were in England denominated felonies, and once made capital, while many other and graver crimes were designated misdemeanors, and followed by milder punishments. As at the date of the constitutional amendments it remained for congress to name offences and prescribe punishments therefor, is it to be held that every offence by it defined must take either its classification or punishment *ex necessitate* from the English system, or solely from congressional provisions?

Originally a felony was an offence which was followed by forfeiture, yet a century ago the English courts repudiated that test, and so have the American courts since. It is said that it is not the grade of the punishment, but the nature and quality of the offence, which must determine its classification. If so the rule is very uncertain. Many offences comparatively trivial were felonies, and punishable at common law with death and forfeiture, which at the present time are not felonies or so punishable either in England or the United States. It must be observed that the constitutional amendment under review does not use the word "felony." True, at common law all felonies were infamous, but as the constitution did not adopt the penal code of the common law, and as consequently there are no common-law crimes against the United States, how does it happen that whatever was in common law a felony comes to be infamous when an offence of a like nature is declared to be an offence—but not a felony or infamous—against the United States, punishable only as the latter had enacted.

Although forfeitures ceased to be the consequence of most felonies before the adoption of the United States constitution, yet the designation "felony" remained. Still, are we to hold that all felonies under the United States constitution and statutes are to be held infamous, notwithstanding their position before the law had been essentially

changed? Section 5326, Rev. St., declares that "no conviction or judgment shall work corruption of blood or any forfeiture of estate." Again, under the head of *crimen falsi,* offences were infamous which were followed with disqualification, as witnesses or jurors. Many offences which, under the English system, involved such consequences do not do so now under many American codes, and especially under the federal laws. So far as observation goes there are but two offences expressly denounced by federal statutes as infamous within the meaning of the common-law definition, yet there are disqualifications for offices in a few others.

Shall all offences, then, involving moral turpitude, be held technically infamous? What shall be the test, the punishment, or the quality of the act? Most modern jurists agree that the nature of the punishment is not the criterion, and yet many of them attempt to draw a sharp distinction at the walls of the penitentiary. If the nature of the punishment does not affect the question, why is it that they make imprisonment in the penitentiary infamous and not imprisonment in the common jail? All familiar with federal statutes and practice know that persons convicted can, in many instances, be sentenced to imprisonment, with or without hard labor, either in a jail or penitentiary.

It is very difficult to reconcile the cases, or to reach a definite conclusion therefrom. In this circuit it has lately been held that the punishment does not give character to the offence, although the later decisions are not in accord with what theretofore had been held otherwise. If the extent or place of punishment does not affect the question, how is it that the walls of the penitentiary can make a dividing line between infamous and non-infamous crimes? It must be confessed that the rulings of this circuit for more than 20 years on this subject were overthrown by the *Maxwell* and other cases, and properly so. Hence, the test is not where the criminal may be imprisoned, nor what at common law would have been the designation of the offence, but what the federal statute prescribes. It is very difficult to understand logically what rule should be observed, in the light of many decisions. Shall the courts pronounce that every felony is infamous, merely because the United States statute denominates a specific offence a felony, when no such offence was known to the common law, and consequently could not be infamous when the constitution was adopted? On the other hand, if congress prescribes an offence and does not denominate it a felony, and yet the very nature of the offence is one of moral turpitude, but the punishment not in-

famous, can the court say it is infamous, to be pursued only through indictments?

It will be seen that great embarrassments exist, which have perplexed the courts, arising not from the constitutional provision alone, but from United States statutes.

Only two offences have denominated expressly against them disqualifications which are within the technical definition infamous, unless all felonies are to be so considered, and certain offences under the election laws pertaining to disqualifications for office. It may be very difficult to reconcile cases with right reason on this subject, and such an effort will be foreborne. Without criticising such cases, and analyzing them it may be wiser to state generally the conclusions reached, and to give the elemental thoughts on which such conclusions rest.

As at the date of the constitution there were no offences under the federal law, with the possible exceptions named, is not the character of each offence thereafter prescribed to be determined solely by the statute? Within recognized rules a felony is infamous, and in the absence of such a designation the offence is not a felony. Hence, if an offence against the United States is defined, and the same is not denominated a felony, and no infamous punishment is denounced, how can a court decide that offence to be without the constitutional provision? Was it the purpose of the constitution to make all offences that congress might thereafter prescribe, to take their quality, not from congressional legislation, but from the common law? If so, was not the power of congress restricted as to offences not known to the common law? So far as their penal consequences might extend,— that is, if congress enacted that certain defined acts should be an offence against the United States, and attached thereto consequences which were infamous,—were they not to be so, although there was no common-law rule on the subject? In other words, could not congress declare what offences it enacted infamous or non-infamous, as it may deem wise?

This suggestion leads up to the main inquiry whether congress was inhibited from making any offence a felony or infamous which the common law or British statutes did not recognize as such. The mere statement of the proposition shows its absurdity, for none of the common-law or statutory offences (British) were United States offences. Whatever congress might enact thereafter would take its character, quality, and punishment solely from the congressional enactment. Although courts would look for the definition of terms

used, if they were common-law terms, to the common law, yet they could not enlarge the punishment beyond what the federal statutes prescribe. Similar offences may have been capital under the British law. Yet congress may have denounced therefor imprisonment merely for a limited term, or merely a fine. How, then, is the offence to be designated,—according to the federal statutes, which must alone govern, or according to the common law, which is no part of the federal system?

Without pursuing further this abstract line of thought, which leads to a *reductio ad absurdum*, it may be well to state succinctly the views of this court. At the adoption of the United States constitution, and the amendments thereto, inasmuch as no federal offences had been defined, it was prescribed that whenever congress should declare certain acts an offence, and attach thereto capital punishments or infamy, the alleged offender should not be brought to trial except after indictment.

The nature, functions, and protective duties of a grand jury have been often defined and enforced by this court. But the question under consideration is, when is the interposition of such a jury essential? It may be stated that the following rules should prevail:

(1) In the absence of a federal statute there is no offence cognizable by United States courts.

(2) When congress has declared an offence, it is what congress has designated it, and not what any other system of jurisprudence or foreign statutes may prescribe.

(3) If the congressional statute prescribes infamy the offence is infamous.

(4) If congress does, without express provisions as to infamy, make the offence a felony the offence must be prosecuted as infamous and by indictment.

Under this head it must be observed that common-law felonies, or offences of like nature, are not within the purview of the constitution unless congress so enacts. The many offences under the British law, with their barbarous consequences, were not, and in some instances (notably, treason) could not be, federal law. By recognized decisions and definitions all felonies were infamous, but as there were no felonies here until congress so enacted, whatever offences congress denounced, not as felonies, but as misdemeanors, could not fall within the description of infamous unless, independent of the technical definition of "felony," they fell within the rule of infamous punishments, so expressly denounced; or, possibly, from the quality or nature of

the offence, as *crimen falsi*. As to the latter, this court holds that the federal statute must alone prevail.

(5) If there are no felonies under the federal law except what the federal statutes so denominate, what other federal offences are infamous? As has been already stated, there are only two statutes which denounce infamous punishment; that is, disqualification within common-law rules. Considering the nature of the United States government and its limitations of authority, what offences and consequences thereof can obtain within its jurisdiction beyond what congress enacts? It cannot borrow authority from England or from any of the states within the Union. It may be that British statutes or law and state statutes measure certain offences against their authority very differently from federal statutes; may denounce against them punishments of infamy or otherwise, while the federal statutes treat like offences as trivial. United States courts are bound to follow United States statutes, and no other, in criminal cases.

It has been urged with force that as United States courts are bound as to rules of evidence in civil cases to follow the state authority, that, therefore, if certain offences under state laws are made infamous the United States courts should consider infamous cases of like quality as to turpitude under the federal law. But is not this a begging of the question? The diversity or incongruity of federal legislation in that respect need not be discussed, whereby what is a rule of evidence in one United States court may not be the rule in another, and whereby United States courts are not governed by a uniform law enacted by congress, but are made subject to local legislation, contrary to the spirit of federal jurisdiction and authority. It must suffice, however, that no state legislation can enlarge or restrict federal authority, nor can such legislation create or qualify a federal offence. Each state may, for purposes of its own, designate what shall be considered offences against its authority, and characterize them as felonies or otherwise; but its legislation in such respects cannot override federal laws, or supply their supposed defects, in matters exclusively within federal cognizance; hence, United States courts cannot look to state legislation for assistance. If, then, congress passes a statute against frauds of various kinds, which, under the common law, would fall respectively under the designation of infamous or non-infamous, should a United States court fall back on the common law to ascertain the nature and quality of this newly-created offence, and attach consequences which congress has not done? These questions have generally been discussed as if whatever offence congress declared was

to be considered, not as what congress enacted, but as what like offences by analogy were considered at common law or by state statutes. At this point the logical difficulty occurs. If congress alone can say what shall be an offence under the United States laws and prescribe the punishment therefor, how can the courts go beyond such congressional enactments? What, then, independent of felonies, shall be considered in the United States courts infamous crimes, within the meaning of the fifth amendment of the constitution? The answer should be, such offences and such only as congress has declared to be infamous. Whence does a United States court derive authority in criminal cases to go beyond the United States statutes? Hence cases not declared felonies or infamous can be prosecuted by information. It is true that congress in its wisdom has chosen to denominate many trivial offences, involving no moral turpitude, felonies, and not so to denominate many of the gravest crimes; yet the courts are bound thereby. In these, as in many other matters, courts can only say: *Sic ita lex scripta est.*

After a careful examination of the many authorities cited, English and American, it seems that the true solution of the vexed question must be found in the fact that there are no federal offences except such as congress prescribes, and that if congress declares an offence capital or infamous, the accused has a right to exact the intervention of a grand jury. This rule is to be taken with the qualification that all declared felonies are to be construed infamous. If congress does not choose to declare an offence a felony, or make it infamous, it cannot be so considered in a United States court.

These views may not be in accord with those expressed by some courts, and especially by those who decide that the quality or character of the offence is or is not to be determined by the punishment. After felonies under the British law had been specifically defined as determinable solely by the consequent punishment, the English courts adopted another rule, which has been generally followed in this country, whereby the nature of the punishment was held not to determine the character of the offence. Still the struggle remains under federal statutes whether, in the absence of a designation of the offence as a felony or misdemeanor, the court should look to the prescribed punishment to ascertain the true classification. Many acts of congress prescribe hard labor or imprisonment in the penitentiary, with or without hard labor for a defined term, or imprisonment solely, or fine and imprisonment, etc., in most instances leav-

ing the place of the imprisonment in the discretion of the court. Is it, then, to be held as a legal proposition that imprisonment in the penitentiary, which is often at the discretion of the court, makes the offence infamous, whereas if, in its discretion, the imprisonment were ordered to be in the common jail it would be non-infamous? Again, if the imprisonment ordered is for more than a year, although hard labor is not denounced, yet the sentence may be to the penitentiary. Shall such shifting, discretionary, and arbitrary rules settle the important constitutional question presented? That is, if the court chooses to make the place of imprisonment, on conviction, in the penitentiary, the offence is infamous; otherwise, not. Suppose trial and conviction had on an information under any of the many statutes, where it is in the discretion of the court to sentence to the common jail or to the penitentiary, or to fine and imprisonment, or imprisonment alone, with or without hard labor, etc., and the court in its discretion sentences to the penitentiary, does the offence thereby become infamous; whereas, if the sentence had been to the jail or to payment of a fine it would have been non-infamous?

But all are of the opinion that it is not, as a general rule, the punishment which determines the nature of the offence, and if it were not so the absurd result would follow that in the cases above supposed the character of the offence would not depend on its intrinsic quality, but on the discretion of the judge who passes sentence. These extreme illustrations are presented in order to show the importance of having some well-defined rules which all can understand.

It has been deemed better not to pass through a careful analysis of the many cases cited, or to review the same, but to present the subject with its attendant difficulties.

The conclusions reached are that under the United States constitution and statutes there are no infamous crimes except those therein denounced as capital, or felonies, or punished with disqualification as witnesses or jurors. If congress makes an offence infamous, it must be prosecuted through indictment; if it makes it non-infamous, it can be pursued through information. This necessarily follows from the fact that under the United States constitution there are no criminal offences other than what congress prescribes, and unless it declares directly or inferentially that an offence is infamous it must be pronounced otherwise. There is no other safe or consistent rule.

A reference, therefore, to the statute, cited at the beginning of this

opinion, makes it clear that the offence charged is not infamous within the rules herein stated. The fact that imprisonment "at hard labor" is denounced does not make the offence infamous within the purview of the constitution, and consequently the case was rightly tried on information.

The motion in arrest is overruled.

The cases cited and examined are appended:

*Wheaton* v. *Peters*, 8 Pet. 591; *U. S.* v. *Reid*, 12 How. 364; 1 Kent, Comm. *336, 337; Coke, Litt. 6, *a b*; Blackstone, *370; Phil. Ev. vol. 1, p. 22, note; 1 Chit. Crim. Law, *600, *601, p. 599; Phil. Ev. 23, note; *People* v. *Whipple*, 9 Cow. 707; *Clark's Lessees* v. *Hall*, 2 Harris & McHenry, 378; *People* v. *Herrick*, 13 Johns. 82; *Cushman* v. *Loker*, 2 Mass. 106; 1 Stark. Ev. 94, 95; 2 Hale, 227; 1 Bish. Crim. Law, §§ 743, 580, 581, 584, 621, 974; 1 Greenl. Ev. §§ 372, 373, p. 15; *Pendock* v. *Mackender*, 2 Wilson, 18; Coke, Litt. 391a, *6b, note 1; 4 Bl. Com. 94, 95, 230; 1 Russell, Crimes, (Graves' Ed.) 44, 46, 47; *Rex* v. *Priddle*, Leach, 442; 2 Hale, P. C. 277; *Rex* v. *Davis*, 5 Mod. 75; 3 Wilson's Works, 371, 377; 1 Hale, P. C. *c.* 43, p. 503; Willis, 665; *State* v. *Gardner*, 1 Root, (Conn.) 485; *Com.* v. *Keith*, 8 Met. (Mass.) 531; *Lyford* v. *Farrar*, 11 Foster, (N. H.) 314; *U. S.* v. *Maxwell*, 3 Dill. 275, 278; *In re Truman*, 44 Mo. 181; *Fox* v. *State*, 5 How. 410, 438; *Moore* v. *State*, 14 How. 13; *U. S.* v. *Shepard*, 1 Abb. 436, 440; *U. S.* v. *Magill*, 1 Washb. 464, 465; *U. S.* v. *Hawthorne*, 1 Dill. 422; *State* v. *Keyes*, 8 Vt. 66, 65; 5 Watts & Serg. 342; *U. S.* v. *Hudson*, 7 Cranch, 34; *U. S.* v. *Lancaster*, 2 McLean, 431, 433; *U. S.* v. *Wiltberger*, 5 Wheat. 76, 93, 96; *U. S.* v. *New Bedford Bridge*, 1 Wood & M. 401; *State* v. *Stephenson*, 2 Bailey, 334; *U. S.* v. *Wilson*, 4 Blatchf. 435; Sergeant's Coast Law, 345; *U. S.* v. *Coolidge*, 1 Wheat. 415; *U. S.* v. *Beavons*, 3 Wheat. 336; *U. S.* v. *Burr*, 4 Cranch, 500; *Marbury* v. *Madison*, 1 Cranch, 176; 4 Tucker's Blackstone, No. 10 of appendix; Conkling's Treatise, 83; *U. S.* v. *Cross*, 1 McArthur, 149; *U. S.* v. *Coppersmith*, 4 Fed. Rep. 198; *U. S.* v. *Sheperd*, 1 Hughes, 520; *U. S.* v. *Block*, 4 Sawy. 212; *U. S.* v. *Yates*, 6 Fed. Rep. 861; *U. S.* v. *Baugh*, 1 Fed. Rep. 784; *U. S.* v. *Waller*, 1 Sawy. 701; Whart. Crim. Law, (3d Ed.) 354 *et seq.;* 11 Am. Jur. and other authorities cited; *U. S.* v. *Okie*, 5 Blatchf. 516; *U. S.* v. *Clark*, Crabbe, 584; *U. S.* v. *Golding*, 2 Cranch, 212; *U. S.* v. *Patterson*, 6 McLean, 467, 468; *U. S.* v. *Mills*, 7 Pet. 138; *U. S.* v. *Clayton*, 2 Dill. 226; *Wilson* v. *State*, 1 Wis. 189; *Com.* v. *Barlow*, 4 Mass. 439; *Com.* v. *Macomber*, 3 Mass. 257; *Star Route Cases*, unreported.